## G. Geortner and J. C. Anthony *vs.* The Trustees of the village of Canajoharie.

If after the dissolution of a partnership, leaving outstanding debts, which remain unpaid, an insolvent partner sells to a third person a part of the partnership property, for the purpose of raising money to pay his individual debts, and the purchaser, at the time of the purchase, has full knowledge of the insolvency of such partner, and of his object in making the sale, the sale will be adjudged fraudulent and void.

After the dissolution of a partnership, all the partners must unite in the transfer of a partnership security, in order to vest the title in the transferee.

After the dissolution of a partnership, neither of the partners can make any disposition of the partnership property, in any manner inconsistent with the primary duty incumbent on all the partners, of winding up the whole concerns of the partnership.

Each partner, upon the dissolution, has a right to require, in the first place, that the partnership funds be directly and regularly applied to the discharge of the partnership debts, and after these are discharged, to have his share of the residue of the partnership funds.

If, after the dissolution of a partnership, either of the partners makes any use of the partnership property, inconsistent with the winding up of its affairs, it is a fraud on the copartners, and on the creditors of the partnership; and a court of equity will interfere, and take the property out of the hands of such partner, by the appointment of a receiver.

After dissolution, either of the partners may receive payment of the debts due the partnership, and apply the moneys received, in payment of the partnership debts.

Where a partnership is dissolved by effluxion of time, or by mutual consent, the qualified joint tenancy between the partners is not destroyed, and a tenancy in common created, until all the partnership debts and liabilities are paid and discharged; and nothing remains to be done but to divide the surplus between the parties.

Geortner *v.* The Trustees of Canajoharie.

THIS was an application on the part of Christian Anthony for a rule to set aside the satisfaction, given by Geortner, one of the plaintiffs, of the judgment obtained in this cause. The action was brought on a draft given by the defendants upon their treasurer, in favor of Geortner & Anthony, the plaintiffs, for $120,95, dated 30th March, 1846; not negotiable. The plaintiffs, Geortner & Anthony, were partners, and stopped business in August, 1844. This draft was given for a partnership debt, due them at the time of the dissolution of the partnership. J. C. Anthony, on or before the 1st September, 1846, sold the draft to his father, Christian Anthony, who paid J. C. Anthony the full amount thereof, in money. Christian Anthony sued the draft in the names of G. Geortner and J. C. Anthony, and recovered a judgment thereon on the 20th of March, 1847. Execution was issued on the judgment on the 22d of April, 1847. Geortner acknowledged satisfaction of the judgment on the 10th of September, 1847, on receiving from the defendants the amount of the judgment, exclusive of the costs which were paid by the defendants to the attorney of Christian Anthony, who recovered the judgment. Christian Anthony gave notice to the defendants that he was the owner of the draft, before they paid the judgment to Geortner. Geort ner also gave notice to the defendants that the draft belonged to him, and that he would settle it with them ; and the defen dants raised the means and paid the judgment to Geortner, and Geortner executed and delivered to them a satisfaction of the judgment. When Christian Anthony purchased the draft from his son, partnership debts of Geortner & Anthony were outstanding and unpaid, which accrued previous to the dissolution of the partnership. At the time of the sale of the draft by J. C. Anthony to his father, the former was, and had been for a long time previous, insolvent. In November, 1846, J. C. Anthony made an assignment of all his real and personal estate to his father and others; and in October, 1846, he confessed a judgment to his father for $10,000. Christian Anthony, when he purchased the draft from his son, knew that it belonged to the late firm of Geortner & Anthony ; that

there were then outstanding partnership debts due by the firm, and that Jacob C. Anthony was insolvent; and he also knew that the moneys to be paid by him to J. C. Anthony for the draft, were to be applied to the payment of an individual debt of J. C. Anthony.

*H. Riggs*, for Christian Anthony.

*T. B. Mitchell*, for the defendants.

PAIGE, J.   From the affidavit of Mr. Harris, the president of the defendants, I am bound to infer that the amount of the judgment, exclusive of the costs, was paid in good faith to Geortner, and that the satisfaction piece was also executed in good faith.   Mr. Harris swears that through the board of trustees of the village, he raised the means to pay the judgment, and did pay the same to Geortner.   And there is no evidence in the case which shows that either Geortner was insolvent, or that the judgment was paid to him, in fraud of his late partner, J. C. Anthony, or of the partnership creditors of Geortner & Anthony.   While, on the other hand, it is expressly sworn that at the time J. C. Anthony sold the draft to his father, he was insolvent; that there were then outstanding partnership debts; that the moneys he was to receive from his father for the draft, he intended to apply in payment of his individual debts; and that all these facts were known by his father when he purchased the draft.   It seems also, that in the next month after the purchase of the draft, J. C. Anthony confessed a judgment to his father for $10,000; and in the succeeding month assigned all his real and personal estate to his father and others. Upon this state of facts there can be no doubt, that the sale of the draft by J. C. Anthony to Christian Anthony was a fraud both upon Geortner, and the partnership creditors of Geortner & Anthony.   The sale, being fraudulent, was void, and passed no title to the draft to Christian Anthony.   But, independent of the question of the fraud, I think that J. C. Anthony had no power, after the dissolution of the partnership, to assign the

draft in question.   After the dissolution of a partnership, all the partners must join in the transfer of a partnership security, in order to vest the title in the transferee.   (*Sanford* v. *Mickles & Forman*, 4 *John.* 224, 228.)

The power of one partner to bind the firm ceases immediately on its dissolution; and the partners from that time become distinct persons. (3 *Kent's Com.* § 43, *p.* 63, *2d ed.*)  None of the partners, after dissolution, can buy, or sell, or pledge goods on account of the partnership; none of them can endorse or transfer the partnership securities to third persons; and none of them can make any disposition of the partnership property in any manner inconsistent with the primary duty, incumbent on all, of winding up the whole concerns of the partnership. (*Story on Part.* § 322.)   On the dissolution of a partnership, the partnership, in one sense, is considered as determined, but in another, as continued, until the affairs of the partnership are finally settled.   And each partner, upon the dissolution, has a right to require, in the first place, that the partnership funds be directly and regularly applied to the discharge of the partnership debts; and after these are discharged, to have his share of the residue of the partnership funds.   (*Story on Part.* §§ 325, 326.  *Wilson* v *Greenwood,* 1 *Swanston,* 480, *per Lord Eldon.*)   And if, on the dissolution of a partnership, any one of the partners makes any use of the partnership property, inconsistent with the winding up of its affairs, it is a fraud on the copartners, and on the creditors of the partnership, and a court of equity will interfere, and take the property out of his hands, by the appointment of a receiver.  (*Crawshay* v. *Maule,* 1 *Swans.* 506, *per Lord Eldon.*)   But after a dissolution, either of the partners may receive payment of the debts due the partnership, and give discharges, on receiving payment; and may apply the partnership funds in payment of the partnership debts; for these acts are in discharge of the duties of the partners to wind up the whole partnership concerns, and to divide the surplus among them, after all the debts are paid.  (*Story on Part.* § 328.  3 *Kent's Com.* § 43, *p.* 63.  19 *Johns.* 143. *King* v. *Smith,* 4 *Car. & Payne,* 108.)   The dissolution of a

Geortner *v.* The Trustees of Canajoharie.

partnership does not render the partners ipso facto mere tenants in common of the choses in action, and other property of the firm. The partnership still continues for the purpose of collecting and paying debts, with all the incidents which belong to that relation. (6 *Cowen,* 441.) A community of interest between the partners, in the partnership property, remains after dissolution, until the affairs of the partnership are wound up. (*Ex parte Williams,* 11 *Ves.* 5, *per Lord Eldon.*) Where a partnership is dissolved by effluxion of time, or by mutual consent, the qualified joint tenancy between partners is not destroyed, and a tenancy in common created, until all the partnership debts and liabilities are paid and discharged, and nothing remains to be done but to divide the surplus between the partners.

In case of bankruptcy, the bankrupt becomes incapable of acting for or binding the partnership by his acts. (*Story on Part.* § 339.) By analogy, an insolvent partner ought also to be deprived of all power to act for the partnership. There is no doubt he is, after he makes a general assignment of his property. And before he makes an assignment, a *court of equity* will restrain him from interfering with the affairs and property of the partnership. And I have no doubt, if after the dissolution of a partnership, leaving outstanding debts, a third person deals with a partner known by him to be insolvent, and purchases from him partnership property, with the knowledge that such partner intends to apply the proceeds of the sale to the payment of his individual debts, that the purchase would be declared fraudulent and void. Christian Anthony is in this predicament; and his purchase of the draft from his son is therefore void. And besides, as before remarked, he acquired no title to the draft, because Geortner did not unite in the assignment of it to him.

Geortner, as a solvent partner of the late firm of Geortner & Anthony, had a right to receive payment of the draft, or of the judgment in which it was merged, and to give a discharge therefor. The moneys received by him he is bound to apply to the payment of the partnership debts; and if any surplus remains, to

account for the share of J. C. Anthony to his assignees. The motion to set aside the satisfaction of the judgment must therefore be denied, with $10 costs, to be paid by Christian Anthony.

