ROBBINS *et al. v.* FULLER.

Where there is no agreement to the contrary, each partner, after a dissolution, possesses the same authority to adjust the affairs of the concern, by collecting its debts and disposing of its property, as before the dissolution.

This right is not lost by the fact that the partnership debts are paid; nor, *it seems,* does it depend upon the state of the accounts between the partners, at all events not as against persons having no notice of the fact.

APPEAL from the Supreme Court. Action upon a judgment. On the trial, these facts appeared: The plaintiffs were partners, and as such held the note of one Edward Fuller, indorsed by the defendant, upon which indebtedness he confessed judgment to them, and judgment was entered up in their favor, September 5, 1838, for $1,767.13. The partnership was dissolved in March, 1838; and the defendant had notice of such dissolution in 1839. In 1844, Reuben Robbins, one of the partners, without the knowledge of the other, gave a power of attorney in the name of the firm to his son, E. A. Robbins, to sell the unpaid demands of the firm; and in June, 1844, E. A. Robbins sold the judgment against this defendant to Wells, and at that time Reuben Robbins, in the name of the firm, gave his son an order on Fuller in these words: "H. Fuller: Sir, please pay to E. A. Robbins, or order, and let this be a receipt for the above. R. & B. Robbins. Akron, Ohio, June 15, 1844." Said order was on a paper containing a statement of said judgment. On the back of said paper the following indorsement was made and signed by E. A. Rob-

bins: "Please pay A. L. Wells, and oblige me, as I have assigned the same to him. E. A. Robbins." Afterwards, in March, 1847, Wells settled the judgment with the defendant for one hundred dollars, agreed to discharge the judgment in full, and executed and delivered to him his own receipt, and a release of the judgment, executed by one Knight. Barna Robbins, the other plaintiff, had no knowledge of, and did not consent to, the giving the power of attorney, and had no knowledge of, and did not consent to, the settlement made by Wells with the defendant, and never received any pay on said judgment, nor did he at any time dispose of his interest in it; and, at the time of giving the power of attorney, the plaintiffs did not owe any debt as copartners. On these facts the plaintiffs claimed to recover one half of said judgment, after crediting the one hundred dollars paid to Wells; and judgment was taken for said moiety, by direction of the court, subject to the opinion of the court at general term. That court gave judgment for the plaintiffs, and the defendant appealed.

*Henderson & Wentworth*, for the appellant.

*George Barker*, for the respondents.

DENIO, J. I am of opinion that the plaintiffs ought not to have recovered judgment in this case. The real question is stated in the opinion given in the Supreme Court to be, whether, in the process of closing up the concerns of R. & B. Robbins, Reuben Robbins, one of the partners, had power to make a sale of, and to transfer the whole title to, the judgment against the defendant. If he possessed such authority, the power of attorney which he gave to his son, E. A. Robbins, under which the latter transferred the judgment in the first place to I. M. Knight, and afterwards to A. L. Wells, was a lawful exercise of the power which he possessed. If these transfers, or either of them, were valid acts, the plaintiffs were not entitled to recover, whatever effect may be attributed to the settlement which the defendant afterwards made with Wells. But it is found that Wright, one of these assignees,

*released* the judgment, which release was delivered to the defendant; so that, upon the assumption that Reuben Robbins was authorized to transfer the judgment, it is now effectually discharged by that release, and no recovery can be had upon it in the name of any person.

During the continuance of the partnership, either of the copartners has full power to settle and compound debts, and to collect and dispose of the choses in action and effects belonging to the concern. If the partnership in this case had continued until the transfer of the judgment was made, under the power given by Reuben Robbins, no doubt could be entertained respecting his right to assign it. But the dissolution of the firm, though it annulled the powers of the respective partners for many purposes, and particularly as to the contracting of debts and the creating of obligations against the copartnership, did not put an end to their authority to administer the assets in accordance with the rights and interests of the parties interested in them, and with the intention of the partnership enterprise. For this purpose the partnership is considered as continuing. It was competent for the partners, by the act of dissolution, to constitute one of their number the special agent for winding up the joint concern. Where they do this, parties who, with notice of the arrangement, deal, in matters connected with the liquidation, with the partners not thus intrusted, are subject to the equitable rights of the other partners. But there must be some one to adjust the affairs of the concern, by collecting its debts and disposing of its property, and dividing the proceeds among the parties entitled; and where, as in this case, none of the parties are specially empowered for this purpose, to the exclusion of the others, the individual partners retain the same authority which they possessed before the dissolution, so far as it may be necessary for such purposes. This position I consider well settled by authority. In the treatise on Partnership by Mr. Bisset, the cases are collected, and the conclusion which he arrives at is, that, "for the purpose of discharging the debts and liabilities of the firm, and giving to each partner his share

Robbins *v.* Fuller.

of the residue, the partners may, notwithstanding the disso-
lution, still perform any act relating to debts and contracts
existing before the dissolution, which they might have per-
formed as partners before the dissolution; such as releasing
or giving a receipt for a partnership debt, signing a bankrupt's
certificate," &c. (Bisset on Part., 90.) The signing of a bank-
rupt's certificate is the highest exertion of authority referred
to; for it releases the debtor and discharges his future
acquisitions; but the power to do it is well established. In
*ex parte Hall* (17 Ves., 62), a firm consisting of Langston &
Hall proved a joint debt against a bankrupt estate. After-
wards the partnership was dissolved; and after that, Langston
signed the bankrupt's certificate without the consent of Hall,
who petitioned that effect might be withheld from it. Lord
ELDON, after referring to the general power which one partner
has to bind the other, added: "The only distinction in this
case arises upon the intermediate dissolution; whether that
makes a difference. As to that debt, the partnership was not
dissolved. The debt was still due to both, and must remain,
though nothing of the old concerns had been left but that
debt." In *Arton* v. *Booth* (4 J. B. Moore, 192), a release of a
joint debt was given by one of two partners after the dissolu-
tion, though the other partner, who challenged the release,
was by the deed to receive and pay all debts due to and from
the partnership; and the partner who gave it was not to
interfere. A joint action for the debt was brought, and the
defendant set up the release; upon which, the partner not
signing it applied to the equitable jurisdiction of the Court
of Common Pleas to set it aside; but the motion was denied;
the court holding that no fraud was established, and that the
defendant could not know that the other partner was alive to
receive the amount under the deed of dissolution. In *Butch-
art* v. *Dresser* (31 Eng. Law and Eq., 121), it was held, that
one partner was authorized, after the dissolution, to pledge or
sell stock to raise money for the purposes of the partnership.
The rule, as it has been stated, was laid down in very distinct
language; and in *King* v. *Smith* (4 Carr. & P., 106), where,

upon the dissolution, it was agreed that one of the partners should receive the debts due to the concern, it was held that the other partner might draw a bill upon a debtor of the firm for the amount of the debt. Lord TENTERDEN said that either partner might give a release of the debts due the late firm: *a fortiori*, he might receive these debts. The principle is illustrated in several other cases referred to in the book first mentioned, which need not be particularly stated. The principle has been repeatedly adverted to, and assumed to be the law in the courts of this State. In *Cram* v. *Cadwell* (5 Cow., 493), it was laid down by the chief justice that, where there is no stipulation between partners, each partner may, after the dissolution, receive the debts and give discharges; and in *Murray* v. *Mumford*, the rule is stated as follows, in the opinion of the court: "The dissolution of a partnership does not destroy the joint tenancy of the partners in the partnership property, and create a tenancy in common. They are still partners for the purpose of settling the partnership concerns, and until that is effected. For that purpose the partnership may be said still to continue with all the incidents belonging to that relation." (6 Cow., 441.)

But it is not necessary to enlarge upon this doctrine, for the opinion of the Supreme Court in the case under review assumes it to be established in the manner I have stated; but it is said that it was shown that all the partnership debts of R. & B. Robbins had been paid; and it is held that, where such is the case, the principle does not apply. I do not, however, see any reason why it should not. The debtor is not shown to have had any knowledge of this circumstance, or to have known how the accounts stood between the partners themselves. Indeed, nothing upon the latter point is disclosed by the evidence; and for aught that appears, Reuben Robbins, who disposed of the judgment now sought to be enforced, may, as between himself and his copartner, have been entitled to the whole interest in that debt. There is, no doubt, a presumption that the interest of partners in the original capital is equal, where nothing to the contrary is shown; but there is

Robbins *v.* Fuller.

not, that I am aware of, any presumption as to the state of their respective accounts with the concern. The facts, as they were presented to the purchaser of the judgment, were that the judgment was recovered for a debt due to the Messrs. Robbins as copartners; and that there had been a dissolution of the firm. This circumstance did not of itself deprive the partner, with whom he dealt, of the power to dispose of the judgment at such sum as he should consider it worth; and as to any other facts which might change the situation or impair the power of the respective partners, he was unacquainted with them. My own opinion is, that the fact that the debts against the firm had all been discharged, would not affect the question where the accounts between the partners were not shown to have been adjusted, though the person dealing with the single partner were acquainted with the fact; but certainly the authority of each partner, in regard to matters of liquidation, would continue in respect to persons who were unacquainted with the fact that no indebtedness of the firm existed.

I am therefore in favor of reversing the judgment of the Supreme Court, and awarding a new trial.

SMITH, J., delivered an opinion to the same effect in respect to the general authority of partners after dissolution, concluding thus: The right of the respective partners, after dissolution, to collect or discharge the debts of the copartnership, cannot depend upon the state of the accounts between the partners. Third persons cannot know the state of such accounts, and cannot be required to ascertain, at their peril, whether the partnership debts are or are not paid. The court below erred in giving judgment upon the verdict for the plaintiffs, and the same should be reversed, and judgment given for the defendant.

WRIGHT, SUTHERLAND and GOULD, Js., concurred.

DAVIES, J., (dissenting.) This suit is in the name of both partners, but is prosecuted solely by Barna Robbins, and for

his benefit. Reuben Robbins has, clearly, no interest therein, having sold and transferred, at any rate, his moiety of the judgment, and, in so doing, assumed to act for the firm and in its name. He also assumed to sell and transfer the other moiety belonging to Barna Robbins. The question to be decided in this case is, whether one partner, after the dissolution of the partnership and the payment of the partnership debts, can sell and assign the partnership property without the knowledge or consent of the other partner. It is undeniable that he can sell his own interest, whatever it may be; but whence does he derive his authority to sell the property which undeniably belongs to his former partner? Certainly not from any rights growing out of their relation as partners, for these are terminated by the dissolution. Not, clearly, from any implied authority which one partner has, even after dissolution, to sell or transfer the partnership property for the purpose of or in payment of the partnership debts; for here there were no partnership debts to pay. It has been regarded as settled law in this State since the decision in *Sanford* v. *Mickles* (4 John., 224), in 1809, that one partner, after dissolution, has not the power to transfer the partnership property. It was distinctly ruled in that case that all the partners must join in the transfer of a bill negotiated after the dissolution for the purpose of vesting the title in the indorsee. The same principle is affirmed in *Geortner* v. *The Trustees of Canajoharie* (2 Barb., 625). These rules are in harmony with the general law of partnership, by which the act of each partner, during the continuance of the partnership, and within the scope of its object, binds all the others. Each party acts as agent of the firm, and the acts of the agent, within the scope of his agency, are binding upon the principal. It is in this sense that the act of each and all results from a general and mutual delegation of authority. Each partner may, therefore, bind the partnership by his contract in the partnership business, but he cannot bind it by any contract beyond those limits. A dissolution, however, puts an end to the authority. By the force of its terms it operates as a revocation of all power to create new contracts; and the right of

partners as such can extend no further than to settle the partnership concerns already existing, and to distribute the remaining funds. The acts of a partner, beyond this, cannot bind the partnership, any more than the declarations, acts or acknowledgments of any other agent of the partnership would do, after his agency had ceased. (Story on Part., § 323.) All the power, therefore, which every partner possesses upon the dissolution is, to pay and collect debts due to the partnership; to apply the partnership funds and effects to the discharge of their own debts; to adjust and settle the unliquidated debts of the partnership; to receive any property belonging to the partnership; and to make due acquittances, discharges, receipts and acknowledgments of their acts in the premises. (Story on Part., § 328.) This enumeration does not embrace the power to sell and transfer the partnership property or securities after the payment of its debts and the settlement of its affairs. Such power must, therefore, be held to be excluded. The maxim, "*expressio unius, est exclusio alterius,*" may be invoked as applicable here.

It follows that the judgment of the general term is correct, and should be affirmed.

ALLEN, J., also delivered an opinion for affirmance. He said, among other things: The agency of the partners only continues as to acts necessarily incident to the closing up of the partnership affairs, and the payment and receipt of the partnership debts. The disposal of the partnership assets, in payment of the liabilities of the firm, is within the power thus continued in each of the partners. But the authority to appoint an attorney to act for the firm is not a necessary incident to the power actually existing. It is not necessary to the exercise of that power, and, therefore, does not exist. E. A. Robbins was not, therefore, the agent of the firm, and had no authority, by the transfer of the judgment, to bind any one but Reuben Robbins, from whom he derived his authority to act. The defendant, having knowledge of the dissolution of the firm, cannot, on any ground of implied agency, claim to

hold Barna Robbins bound by the act of Reuben Robbins or his appointee, E. A. Robbins. He is chargeable with notice of the defects in the power of each to act for Barna.

Had Reuben Robbins executed a formal release, the question would have been different. By the technical force of the release by one of two joint obligees, or creditors, an action upon the demand released will be barred. But this is for technical reasons not affecting this action, where no release was given. If a release had been given, it could only have been set aside for fraud. The agreement to receive, and the receipt of, the small sum of one hundred dollars in full of the judgment, did not bind Barna Robbins, who did not assent to it. The judgment below was right, and should be affirmed.

*Judgment reversed, and new trial ordered.*