By the Court, Monell, J.
As I understand the charge in this case, it was to the effect, that if Algie had retired from the firm, and the defendant had notice of such retirement, a subsequent payment to him by a debtor of the firm, of a less sum than the whole amount of the debt due, if made upon a compromise of a claim disputed in good faith, would extinguish the indebtedness ; and it was left to the jury to say whether the compromise was fairly and honestly made. They were instructed, that if they should find there was a fair subject of dispute for the parties to settle, and that they settled it faii’ly according to their understanding of what was right, taking into consideration the claim of other parties, they must give the defendant a verdict; but if they should find the compromise was riot a fair and honest one, then their verdict should be for the difference between $700 and the sum which, with the sum paid to Algie, would be a just compensation to the plaintiff for work, &c. under the contract. The jury by finding that $125 was due to the plaintiff, have necessarily found that the compromise was not fairly and honestly made, and therefore not an accord and satisfaction of the whole debt. As such finding is in the plaintiff ’s favor, he cannot complain; and it is therefore unnecessary to examine any of the exceptions which relate to the question of the compromise and settlement made with Algie.
The question then is narrowed to this, whether under the *343 facts of this case, the payment of $700 to Algie was a payment pro tanto, and proper to be deducted from the plaintiff’s claim. The appellant’s counsel concedes the rule to be that after dissolution, either of the former solvent and competent partners, in the absence of an agreement to the contrary, can collect a debt due to the firm, and give a discharge. Such undoubtedly is the rule. (Parsons on Part. 388, 9. Robbins v. Puller, 24 N. Y. Rep. 570.) But upon the withdrawal of one member of a firm, and a transfer of all his interest to- the remaining members, such power to discharge an indebtedness ceases, and a payment made by a debtor having notice of such withdrawal and transfer, would be invalid. I do not find, however, any sufficient evidence in this case to bring it within the principle I have last stated. I do not find any sufficient proof, such as would have sustained a verdict, that Algie had either in fact or in law, transferred his interest to the remaining partners. There was some evidence that the firm was in debt, about $5000; but even if such fact had been brought to the defendant’s knowledge, it would not have invalidated the payment to Algie. (Parsons on Part. 396.) The extent of the notice was that Algie was out of the firm, or had withdrawn from the firm, and had no interest in it. Such a notice did not prevent the defendant from effectually paying to Algie the debt due the firm. (King v. Smith, 4 Car. & P. 108. Duff v. East India Co., 15 Ves. 198. Combs v. Bornell, 1 Dana, 473.)
The ground of the objection to the question put to Kilpatrick does not appear. It was a proper mode of inquiry to ascertain the extent of defective workmanship or materials, and their effect upon the value of the houses; and although perhaps not the best or most satisfactory way of getting at the injury in money of the defective work, it was necessarily some, and therefore competent evidence.
I see no reason for disturbing the judgment, and think it should be affirmed, with the costs of the appeal.
*344 Robertson, J.
The learned justice, before whom the issues in this action were tried, charged the jury that “ there was nothing ” for them to consider on the subject of the settlement between the agent of the defendant (Kilpatrick) and Algie, except as to whether it “ was a fair and honest one." To which instruction an exception was taken. He also refused to charge otherwise than he had charged, either that it was void “ if they believed the payment was made to Algie to defraud the remaining copartners,” or that “ the defendant was not discharged by payment to Algie” either “if the latter had withdrawn from the firm before such payment and at the time of such withdrawal, “ was indebted to the firm or his co-partners for over drafts, advances and losses * * and the defendant had notice of these facts,” or “if Algie withdrew from the firm and relinquished to the remaining co-partners his interest in the assets of the partnership before such settlement.” To the refusal to chárge either of those propositions the counsel for the plaintiff, excepted. The judge, however, instructed the jury that if they found the compromise was not a fair and honest one, they should “ give a verdict for the difference between the $700 (paid for it) and the sum which” they thought “would be a fair and proper compromise to be made.” To which an exception was taken by the counsel for the plaintiff.
The jury, under these instructions, found a verdict for the plaintiff for $125; having plainly found under the charge that the settlement with Algie was not “ a fair' and honest or proper one." Of course, unless there was something in the evidence to raise a question as to the good faith of the settlement, the plaintiff cannot complain of the verdict, and the question of law would not be presented, whether such settlement, if fraudulent, was void, entirely or only as to the difference between what was paid and what ought to have been paid.
Bad faith towards his co-partners by Algie in making such settlement, might be established by proof of his want of authority to make it, either by having actually relinquished *345 his interest in the claim to his partners on his withdrawal from the firm, or by being deprived of such interest, by being so much indebted to them that he would not be entitled to any share of the residue of the assets of the firm. The bad faith of the defendant in such settlement, (which is also necessary to invalidate it,) might be proved either by evidence of actual notice of such want of interest in Algie, or by such a mode of conducting the negotiation and closing the settlement, as would raise suspicions in the mind of a person of ordinary prudence and intelligence, that Algie was acting in bad faith towards his partners.
And first, in regard to the question of actual notice to the defendant of any loss by Algie of his right to settle a claim due to Ms firm. • A written notice signed by two of them, (John and James Fettretch,) was delivered to an agent of the defendant, (Kilpatrick,) about ten days, (March 14th,) before such settlement, (March 24th,) merely notifying the defendant not to pay any more money to Irwin or Algie, otherwise he would be responsible for it over again, but furnishing no reason for such prohibition, and giving no other information. This, by itself, contained nothing to -require the defendant to make any inquiry, as to the grounds'of such prohibition, and certainly did not disclose any relinquishment by Algie of any right. The conversation had in the latter part of February or beginning of March, -previous to such settlement between Kilpatrick and the Fettreteh.es, (John and James,) gave the former no information that Algie had lost all control over the claim. James Fettretch simply told him, that Algie had “nothing at all to do with the firm,;” he was “out and working on day’s salary.” The words he used were, “Algie has nothing more to do with the firm.” This amounted to nothing more than notice of his withdrawal from the firm, which was wholly immaterial. No exception was taken to the instruction of the presiding justice that the mere withdrawal of Algie from the firm of Irwin & Co. even with knowledge of it, *346 by the defendant, did not deprive Algie of his right to demand payment from the latter of his firm’s claim against him, which undoubtedly was the true rule of law. The foregoing is substantially all the evidence as to any actual notice to the defendant that Algie had ceased to have any right to collect or discharge the claim in question. On the other hand Kilpatrick, by whom the settlement was conducted, testified that he had “ no reason to suppose ” that Algie “ was not a member of the firm, when ” he settled with him, and that he “ had no notice whatever of Algie having no right to receive the money ; as a partner of the firm,” which is entirely uncontradicted. The defendant himself testified that he had no “ reason at any time to suppose (even) that Algie was not a member of the firm,” and that he “ had no intention of defrauding any one,” although he received the written notice before mentioned. There was, therefore, certainly no proof of any notice to the defendant prior to the settlement, of the occurrence of any thing which would have deprived Algie of his right to settle the debt.
It will be found, also, there was no evidence of any such suspicious circumstances in the mode of settlement, conducted by (Kilpatrick as) the defendants’ agent, with Algie, as to raise a question of had faith on the part of the defendant towards the other members of the firm of Irwin & Co. so as to have justified its submission to the jury. Algie made the estimate for the work and the contract itself with Kilpatrick. During the work, the latter only went to other members of the firm, when he could not get Algie to do what he wanted. A lien having been filed, about the 9th of March, 1866, in the county clerk’s office for the claim in question, indorsed with the names of Irwin and Algie as composing the firm, Kilpatrick on the same day ascertained from the clerk, what steps were necessary to discharge it. ■ About the same day, Kilpatrick offered John Fettretch $>1200 to settle the claim, and proposed to refer it to arbitrators, and talked about it again next day. Within a week after that, Algie stopped Kilpatrick in the street as he was *347 driving a Wagon, and they “ had a conversation in relation to the "whole matter.” Algie then knew all about the lien and said, “If you want to settle the matter fairly, I am willing to do what is right; settle it fair and square between man and man.” Kilpatrick then informed him he would see the defendants’ counsel, (Orosby,) and talk with the defendant, and come to a conclusion. “ That was done, the matter talked over,” and the defendant left it with his lawyer. There were two or three interviews during, those days respecting it, and the final “ result of such negotiations, was.that after figuring over what would he fairly a deduction for insufficient and had work,” $700 was fixed as a fair price,for a settlement, which was paid and a receipt in full given by Algie on the 24th of March, 1866. Algie testified that he went to Kilpatrick first, and wanted him to settle -with him, (Algie,) and claimed that the latter knew him to be a.partner; that, there was a discussion about the matter; he demanding at first $1000, but making after-wards a deduction; he thought he had told John Eettretch he was going to settle that claim; although the latter denied any knowledge of such intention. Algie also, denied that in making suc'h settlement he ever “thought of such a thing in the world as defrauding or injuring any one.” I am unable to perceive in all this evidence any circumstance of suspicion, coming to the knowledge of the defendant or his agent, which should have raised in their minds as men of ordinary intelligence or prudence a doubt as to the right of Algie to settle such claim.
I do not regard the nature of Algie’s interest in the partnership profits, or his want of capital, or the branch of business to be conducted by him, or his receipt of separate wages for his services, or the refusal of Kilpatrick to-look to any one but John Fettretch, or the private conversation between Algie and the Fettretches in reference to his retiring from the firm and receiving more wages, not communicated to the defendant, or his indebtedness to the firm equally unknown, or the conversation between the defend *348 ant and James Eettretch after the settlement, as having any bearing on the question of the defendant’s good faith in making it.
It is very possible, that if a collusive settlement by a debtor made with one joint contractor to defraud his fellow contractors is void, all considerations paid by the debtor for it are to be disregarded. Rut in this case, the charge was more favorable to the plaintiff than he was entitled to, by having the question of the fairness of the settlement, without any evidence legally assailing it submitted to the jury, whereby he- has gained a verdict of $125. I do not think he can complain for not getting $700 more, to which he would not be entitled without bad faith on the part of the defendant, (of which there was no evidence,) none of the exceptions to the admission or exclusion of evidence being tenable. I therefore concur in affirming the judgment, with costs of the appeal to the defendant.