## *In re* SAULS, Bankrupt.

*(District Court, W. D. Tennessee.   July 21, 1880.)*

1. BANKRUPTCY—DISCHARGE—ASSENT OF CREDITORS—NON-ASSENTING CREDITORS MAY OBJECT.

> Non-assenting creditors, who have proved their debts, may question the validity of any assent given in favor of the discharge, and object to granting a certificate, by showing that the proper number and amount of creditors have not assented.

2. SAME SUBJECT—PARTNERSHIP—SURVIVING PARTNER—RELEASE OF DEBT—CREDITORS AS FUNCTIONARIES.

> A surviving partner may assent to the bankrupt's discharge in the name of the firm, and it is not necessary that the bankrupt should procure the assent of the administrator of the deceased partner or the creditors of the firm. His power to do this may be derived from general principles governing his relation to those interested in the debt proved by him, or the firm, and also as an implied grant of power from the bankruptcy statute itself. Creditors are, under the bankrupt law, in some sense, functionaries performing *quasi*-ministerial or *quasi*-judicial duties.

In Bankruptcy.

*L. B. McFarland,* for bankrupt.

*Humes & Poston,* for creditors.

HAMMOND, D. J.   One of the creditors assenting to the bankrupt's discharge is J. H. McClellan, as surviving partner of the firm of Guy McClellan & Co., the other partner being dead.   If this debt be counted the bankrupt is entitled to his discharge because of having secured the assent of a sufficient number and amount of his creditors who have proved their debts.   But if this debt, which was also proved by the surviving partner, be rejected in the count, there is a deficiency of assenting creditors, and the discharge must be refused. The objection is made by a non-assenting creditor that a surviving partner cannot assent so as to bind either the administrator of the deceased creditor or the creditors of the firm, for whom it is argued he is a trustee; and therefore the assent of these *cestuis que trust* must likewise have been procured to entitle the bankrupt to his certificate.

The question has been argued on both sides with exceptional thoroughness, and it is said by counsel that no case

ruling the point has been found. The bankrupt's counsel submits that the non-assenting creditor cannot question the action of the surviving partner, who is responsible alone to the administrator of the copartner, or to the firm's creditors, if he violates his trust. But I am of opinion that non-assenting creditors have a clear right to insist that the certificate of discharge shall not be signed, unless it is shown by the record that the bankrupt is entitled to it. They may object to invalid or insufficient assents, for the reason that their own debts are affected and may be discharged if they be permitted to operate contrary to law.

The learned counsel for the objectors insists that by the death of a partner the scope of the partnership is restricted to winding up the concern, and the powers of the survivor are correspondingly so restricted that he can appropriate nothing to himself, nor do anything which will operate to the injury either of the creditors of the firm or the administrator of the deceased partner's estate; that he cannot, without consideration, release a debt due the firm, or give away any portion of the partnership effects, and that his duties are confined to realizing all that is possible out of the assets for the payment of the creditors of the firm and distribution to the deceased partner's representatives.

The application of this argument to the case in hand is that it is the survivor's duty to keep the debt against this bankrupt alive to be collected out of future acquisitions, and that, by assenting to his discharge, he thereby extinguishes the debt in violation of this duty, and entails a loss upon those interested, which he has no power to do without their consent. No case is cited which discusses the power of a surviving partner in this matter of consenting to a bankrupt's discharge, and the argument is deduced from principles applied in common-law or equity cases in restraint of a surviving partner's power over the partnership property and in aid of those interested in its most beneficial appropriation to the purposes for which he holds it. *Daniel* v. *Daniel*, 9 B. Mon. 195; *Bookout* v. *Anderson*, 2 La. An. 246; *Rogers* v. *Batchelor*, 12 Pet. 221; *Vance* v. *Campbell*, 8 Humph. 524; *Martin* v. *Kirk*,

2 Humph. 529; *Belote* v. *Wynne*, 7 Yerg. 541; *Bancroft* v. *Snodgrass*, 1 Cold. 441.

These and other cases cited, some of them treating of the powers of a partner in existing firms, and some of his powers after dissolution, all show that a partner cannot waste the assets or act beyond the scope of the partnership business, nor, after dissolution, create new debts, or misapply the firm property. But they seem to me not to settle any principle which militates against the idea, that, after all, it may be within the legitimate scope of a surviving partner's power to assent to a bankrupt's discharge. The nearest analogy to it in the ordinary conduct of his affairs is the *release* of a debt. The case of *Bookout* v. *Anderson, supra,* does decide that in Louisiana a surviving partner cannot release a debtor of the firm so as to qualify him to be a witness, but then the law of Louisiana seems to be peculiar as to the powers of a surviving partner, who has no right at all to administer the firm assets until authorized by a court of probate. Coll. Partnership, (4th Ed.) § 129, note 3; Id. § 666. And in *Buckley* v. *Dayton*, 14 John. 387, it was held that the release of a witness by one partner alone was sufficient to qualify him. On general principles, a surviving partner is the owner of the partnership assets; he has the legal title, and it is only in a court of equity that he is treated as a trustee. *Case* v. *Abeel*, 1 Paige, Ch. 393. He may collect, compromise, or otherwise arrange all the debts of the firm, and his receipts, payments, and doings generally in that behalf are valid, if honest and within the fair scope and purposes of the trust. And if there be negligence, delay, misconduct, or gross mistake, equity will interfere and give proper relief. Pars. Part. (3d Ed.) 440; Id. 442 and notes. So completely is this so that the firm assets pass to his administrator and to his individual assignee in bankruptcy. *Brooks* v. *Brooks*, 12 Heisk. 12; *Re Stevens*, 5 N. B. R. 112.

The power of a partner in an existing firm to release a debt cannot be doubted, even after dissolution. Coll. Part. §§ 468, 636, 637; Story, Part. §§ 115, 252; Pars. Part. 172, note *w; Salmon* v. *Davis*, 4 Binney, 375; *Nepier* v. *McLeod*, 9 Wend.

120; *Robbins* v. *Fuller*, 24 N. Y. 570, 573. And this is particularly so after institution of legal proceedings, when the power arises rather from general practice in actions at law than from privileges of partnership; for it is generally true that *one plaintiff* may release an action brought by two. Coll. Part. §§ 441, 636. No case that I have seen suggests that a surviving partner is deprived of this power to release a debt either before or after action brought. In *Robbins* v. *Fuller, supra*, the court say: "The partners may, notwithstanding the disolution, still perform any act relating to debts and contracts existing before dissolution which they might have performed as partners before the dissolution, such as releasing or giving a receipt for partnership debt, signing a bankrupt's certificate, etc. The signing of a bankrupt's certificate is the highest exertion of authority referred to, for it releases the debtor and discharges his future acquisitions, but the power to do it is well established." Page 573. And see *Arton* v. *Booth*, 4 J. B. Moore, 192; S. C. 16 E. C. L. 373, which is a strong illustration of the power to release after dissolution. Partners are more notably bound by the acts of each other in proceedings under the bankrupt laws. One may, on behalf of all, prove a debt, vote in the choice of assignees, and sign the certificate. Coll. Part. §§ 444, 467; 3 Kent, 49; Pars. Part. 172, note *w*, at page 175; Eden, Banky. 397, in 25 Law Library, 302; *Ex parte Hodgkinson*, 19 Ves. 291; *Ex parte Mitchell*, 14 Ves. 597; *Ex parte Hall*, 17 Ves. 62; and other cases cited in Mr. Sumner's notes to these cases in Vesey.

In this last case, *Ex parte Hall*, it was the signature of the certificate by one partner after a dissolution. In all the cases cited, and many others examined, while I find no case ruling the point as to a *surviving* partner, I find none taking a distinction against him in this matter of assenting to a discharge; and, inasmuch as his title is enlarged, and he is more exclusively and entirely master of the assets than before dissolution, or after dissolution, otherwise than by death, it would seem that he would have, as surviving partner, in this respect, the same power as that given him in the

cases mentioned. *In re Sausmerez*, 1 Atk. 85, it was ruled an executor can sign the certificate, and in a case cited in Bacon's Abridgment, tit. "Bankrupt, K," (1st Ed.) and note (Ed. 1860) from Green. 260, where the debt proved devolved on the bankrupt himself, it was held he might consent to his own discharge as a creditor, "because otherwise he never could be released, as no one else is or could be qualified to sign the certificate for him." Hilliard, Banky. (2d Ed.) 316, note *a*.

In the case of *Barrett*, 2 N. B. R. 533, where it was ruled that one partner may execute a power of attorney to vote for an assignee, and bind his copartners, the exception in favor of such a power is supported as a necessity in bankruptcy cases, upon the authority of some of the English cases I have cited here. Our own bankrupt law, in the matter of the discharge and this assent of creditors, is modelled on the English statutes under which these decisions were made, and they are quite sufficient as authority. The learned counsel for creditors here insists that the administrator of the deceased partner can, no more than the surviving partner, assent to the discharge, and for the same reasons which he so ably presents. The result would be that the bankrupt cannot have any assent on this firm's debt, although it may be proved and counts against him; and we can imagine a case where, all or a large proportion of the creditors of the bankrupt being surviving partners, he could get no discharge at all. It cannot be that he would have to go to all the creditors of Guy McClellan & Co., and all the parties interested in the deceased partner's estate as *cestuis que trust*, and procure *their* assent. *Ex parte Dubois*, 1 Cox, 310; *Ex parte Rigby*, 19 Ves. 463. These cases do not apply to executors or partners. This demonstrates the necessity of making this power reside in the surviving partner in bankruptcy cases, whatever his common-law powers may be to release a debt.

Moreover, I am of opinion that the power may be supported as a statutory power under the bankrupt act itself. It is true, this assent operates to extinguish the interest of the administrator of the deceased partner in this debt against the

bankrupt, but so it does to extinguish the debts of all the non-assenting creditors. These assenting creditors, when sufficient in number and amount, by their assent extirpate all the non-assenting debts. Where do they get the power to do this? Clearly, from the statute. The truth is, they are functionaries—*quasi* ministerial, *quasi* judicial, it may be—charged in part with the administration of the law, and, as such, the depositaries of certain powers, among which is that of determining when the bankrupt shall be discharged and when not. Hilliard on Bankruptcy, (2d Ed.) 239, 241. The *law* discharges the debts, the *law* performs the operation of releasing them, the creditors being merely donees of a power to determine the cases in which the law shall so operate. The legislature has left it to the discretion of the creditors whether they will or not assent to the discharge, and this discretion is absolute. Lord Eldon observes that the law has left the bankrupt entirely to the caprice of his creditors to sign the certificate or not, under a high moral obligation, perhaps, but no legal obligation to do it, however great his atonement. And he says "there can be no stronger proof of the good nature and humanity of the British character than the readiness with which creditors sign." *Ex parte Joseph*, 18 Ves. 340; *Ex parte King*, 11 Ves. 417; *Ex parte Gardner*, 1 Ves. & B. 45; *Ex parte Cridland*, 3 Ves. & B. 95, 103; Hilliard on Bankruptcy, (2d Ed.) 315, 316. The statute does not name a surviving partner as one of the donees of this power, but from necessity, and by all the analogies of the law, it is faily inferable that it was intended he should be the donee, rather than innumerable and remote beneficiaries of the *quasi* trust he executes. The release is not without consideration, for the bankrupt law enlarges the remedies of the creditors, and gives them inquisitorial and other powers they would not otherwise enjoy. It also gives ample protection against fraudulent bankruptcies by withholding a discharge in all cases of misconduct by those who ask its relief.

Let the bankrupt be discharged.