ROWLAND N. HAZARD et al., Respondents, v. JOHN R. CASWELL et al., Appellants.

A partnership trade-mark is an asset of the firm, salable on a dissolution like any other asset.

Upon the dissolution of the partnership either partner may continue to use the trade-marks, unless he has transferred or in some manner divested himself of the right so to do.

Plaintiffs and defendant C. were formerly copartners carrying on business at Newport, and in New York; in the former place they had one and in the latter two stores. They owned a trade-mark used in connection with a proprietary article prepared by them at one of the New York stores, and sent to the other stores for sale; the labels bearing the trade-mark were divided between the three stores. Upon the expiration of the term of the partnership, C. retired from the firm. He transferred to plaintiffs all his right, title and interest in the premises where the business had been conducted at Newport, and in the stock in trade and property there, excepting book accounts, he also transferred to plaintiff his interest in the labels on hand, and the bottles in which the article was put up for sale, also the moulds and stamps with which they were made. In none of the transfers was the trade-mark specified. The principal assets in the New York stores were divided. Plaintiffs continued the business under the old firm name at the three stores. C. formed a new partnership, which prepared and sold the same article put up in similar bottles, with the same label, except the firm name and place of manufacture, for which was substituted the name and place of business of the new firm. In an action to restrain the use of the trade-mark *held*, that the exclusive right to such use was not assigned by the transfer of C.'s interest in the Newport business; that, assuming plaintiffs were the sole successors of the old firm and to its business with the right to trade under that firm name, this, in the absence of an agreement to that effect, did not convey with it such exclusive right, and either party could thereafter use the devices constituting the trade-mark.

Also *held*, that as the label used by plaintiffs, after the dissolution contained an assertion which was untrue, *i. e.*, that the article was manufactured

by the old firm, they were not entitled to the aid of a court of equity, and that compliance with the provisions of the statute (Chap. 400, Laws of 1854) authorizing in certain cases the continued use of the copartnership name after dissolution, did not affect or enlarge plaintiffs' right as against the retiring partner.

(Argued June 18, 1883 ; decided October 2, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 5, 1880, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee. (Mem. of decision below, 14 J. & S. 559.)

This action was brought to restrain defendants from using certain devices, the exclusive right to the use of which as a· trade-mark was claimed by plaintiffs, and to recover damages, etc.

The material facts are stated in the opinion.

*Samuel Hand* for appellants. The trade-mark not being sold but remaining as undivided assets of the old firm, all the members of the dissolved firm could use it in their business. (*Huwer* v. *Dannenhofer*, 82 N. Y. 500; *Taylor* v. *Bothen*, 5 Sawyer Cir. Ct. 584; *Yound* v. *Hughes*, 3 Hughes C. Ct. 274.) An intention, if one existed, to transfer is hardly equivalent to a transfer where one has confessedly never been made. (*Howe* v. *Searing*, 6 Bosw. 354.) If to permit the plaintiffs to call themselves "successors" meant to sell the good-will, it could not include their trade-mark. (*Kennedy* v. *Lee*, 3 Meriv. 440; *Crutwell* v. *Lye*, 17 Ves. 346; *Morgan* v. *Schuyler*, 79 N. Y. 490, 494; *Fenn* v. *Bolles*, 7 Abb. Pr. 202.) The Hazards did not acquire any right by the certificate filed by them even to the firm name, because the certificate must be valid when filed, or it is void forever. (*Fenn* v. *Bolles*, 7 Abb. 202; *Dougherty* v. *Van Nostrand*, Hoffm. 68 ; *Wedderburn* v. *Wedderburn*, 22 Beav. 104; *Hall* v. *Barrow*, 4 DeG., J. & S. 150.) Even the transfer of the good-will expressly does not authorize the use of the vendor's name by the buyer. (*Howe* v. *Searing*, 6

Bosw. 354.) Each partner of a dissolved firm copartnership is free to use and enjoy all intangible rights which belonged to his firm, unless they are sold. (*Huwer* v. *Dannenhofer*, 82 N. Y. 499; *Mitchell* v. *Condy*, 37 L. T. Rep. [N. S.] 268; Brown on Trade-Marks, § 530; *Banks* v. *Gibson*, 11 Jurist [N. S.], 680; *Comstock* v. *White*, 31 Barb. 301.) The authority of the plaintiffs to collect the debts and alone receipt for them did not even transfer the defendants' interest in these debts. (*Napier* v. *McLeod*, 9 Wend. 120.) It was error also to attribute any force to the fact that the Hazards took the labels and bottle moulds. There was nothing symbolic about this transaction. (*McGowan Co.* v. *McGowan*, 2 Cin. [Ohio] 313.) There is absolutely no evidence to justify the finding that plaintiffs were successors, or to justify the use of any such fact in determining the title to this label. (*Morgan* v. *Schuyler*, 79 N. Y. 490.) The burden rests upon respondents to satisfy the court beyond doubt that any improper evidence received did not affect the mind of the court. (*F. & Manuf. B'k* v. *Whinfield*, 24 Wend. 219; *Dresser* v. *Ainsworth*, 9 Barb. 619; *Boyle* v. *Coleman*, 13 id. 42; *Battin* v. *Healy*, 36 How. Pr. 346; *Jaeger* v. *Kelly*, 7 Robt. 586; *Williams* v. *Fitch*, 18 N. Y. 546; *Erben* v. *Lorillard*, 19 id. 299; *Smith* v. *Isaacs*, 58 id. 680.)

*Henry H. Anderson* for respondents. The devices upon the label in controversy constitute a valid trade-mark, the proprietors of which are entitled to protection against infringement. (Upton on Trade-Marks, § 9; *G. & H. Manuf. Co.* v. *Hall*, 61 N. Y. 226; *Newman* v. *Alvord*, 31 id. 189; *Congress Spring Co.* v. *High Rock Spring Co.*, 45 id. 291.) As the defendant Caswell retired wholly from the firm of Caswell, Hazard & Co., and intended to sell and transfer, and did sell and transfer to the plaintiffs his entire interest in the business of that firm and in all that was in any way characteristic of the business and copartnership, the plaintiffs acquired the exclusive right to use this trade-mark. (*G. & H. Manuf. Co.* v. *Hall*, 61 N. Y. 232; *Sohier* v. *Johnson*, 11 Mass. 2, 8;

*Shipwright* v. *Carpenter*, 19 W'kly Rep. 599; *Dixon Cruci-ble Co.* v. *Guggenheim*, 7 Phila. 408.) The use of the label and trade-mark in dispute by the defendants is a fraud on the public which the court was right in restraining. (*Hookham* v. *Pottage*, L. R., 8 Ch. App. 91; *Wotherspoon* v. *Currie*, L. R., 8 Eng. & Ir. App. 515; *Lee* v. *Haley*, L. R., 5 Ch. App. 155; *Glenny* v. *Smith*, 11 Jur. [N. S.] 964; *Newman* v. *Alvord*, 51 N. Y. 189; *G. & H. Manuf. Co.* v. *Hall*, 61 id. 230; *Col-man* v. *Crump*, 70 id. 578; *Croft* v. *Day*, 7 Beav. 84; *Hege-man* v. *Hegeman*, 8 Daly, 1.)

DANFORTH, J. The trial court found in substance that prior to July 31, 1876, the plaintiffs and the defendant Caswell were copartners, doing business as druggists at Newport, R. I., and in the city of New York, under the firm name of Caswell, Hazard & Co., using therein as owner, the trade-mark in ques-tion; that on the day above named the copartnership expired by limitation, and the plaintiffs continued the business under the old firm name at its former location in both places, and prepared and sold cologne put up as before under the label used by the old firm, while the defendant, with one Massey, under the firm name of "Caswell & Massey," at once engaged in business as druggists in the city of New York, and also pre-pared and sold cologne-water in bottles similar to those before used, and bearing a label in all respects like the one above re-ferred to, except the firm name and place of manufacture, in lieu of which was substituted their own name of "Caswell & Massey," with the inscription, "Distilled by Caswell & Mas-sey, Chemists, 1117 Broadway, New York;" whereas the plaintiffs' label read, "Distilled by Caswell, Hazard & Co., Chemists, 132 Thames street, Newport, R. I., and New York."

There can be no doubt that upon the dissolution of the old firm either partner might continue to use the trade-mark in question, unless he conferred upon the other an exclusive right to do so (*Robbins* v. *Fuller*, 24 N. Y. 570; *Huwer* v. *Dan-nenhoffer*, 82 id. 500; *Hall* v. *Barrows*, 4 DeG., J. & S. 150; *Bury* v. *Bedford*, id. 352), and as to that the finding is "that

the defendant Caswell, on retiring from the said firm, received his share of the assets thereof, *partly in stock, in trade,* and partly in money, and for a valuable consideration sold in terms to the plaintiffs all his right, title and interest in the land and building where the business of the said firm had been conducted at Newport, and in the stock in trade and property there of every kind, excepting book accounts outstanding at the date of the said dissolution, which property *included the signs bearing the* firm name of. Caswell, Hazard & Co., and the said *trade-mark* and label which were then in use at such place of business," and the trial court refused to find as requested by the defendants ; " that the same trade-mark and label    \*    \*    \* were in use by said firm of Caswell, Hazard & Co. prior to July 31, 1876, in all their three stores, two in New York and one in Newport."

The appellants upon this finding and refusal raise the only questions which are material to consider in this case. " First : I find no evidence upon which the refusal can stand. Hazard, one of the plaintiffs, testifies that the proprietary articles made and sold by Caswell, Hazard & Co. were prepared at the Fifth avenue store (with which alone a wholesale department was connected), and sent to the other two stores." It was proven that the cologne in question was one of those proprietary articles, and referring to labels used upon packages of it, he says : " The labels were divided among the three stores ; " " each had its stock of labels," and adds : " I do not know, of my own knowledge, that this cologne was ever made at Newport." Philip Caswell, Jr., who prepared the formula under which the cologne was made, and was in business as a member of the firm preceding Caswell, Hazard & Co. at Newport, till 1872, says : " Up to that time none was made there." The circumstances of the case also indicate that the trade-mark and label must have been used in New York as well as in Newport. Assuming that to be the case, the finding above cited does not sustain the conclusion of law that the defendant sold to the plaintiff the exclusive right to use the trade-mark. It is to be noted that there is nowhere to be found a sale or transfer of Cas-

well's interest or right in the trade-mark; it is supposed to be included in the " stock in trade and property of every kind of the copartnership in Newport." The trade-mark was of course the property of the firm, but not property situated in Newport, and while it might follow a general transfer of Caswell's interest in the entire property of the firm, it is excluded by the qualifying words which describe the location of property actually intended to be conveyed. The written transfer does not necessarily, nor, as I think, by any fair construction include the trade-mark in question, and as the trial court gave to it a different interpretation, there should be a new trial, unless the judgment of that court can be sustained upon the further finding that the plaintiffs are " the sole successors of the firm and to the business of the former copartnership of Caswell, Hazard & Co., with the right to trade under that firm name." This is stated as a conclusion of law, but even if we assume it to be warranted by the findings of fact, it would not follow that the plaintiffs thereby acquired exclusive property rights in the trade-mark. The firm expired by limitation, and the plaintiffs rightfully continued to carry on the business at the old place, and so far as the good-will of that business attached thereto, they must be deemed to have acquired all the benefit of it. But in the absence of an agreement to that effect, the exclusive right to use the trade-mark would not go with it. (*Howe* v. *Searing*, 6 Bosw. 354; *Robbins* v. *Fuller*, 24 N. Y. 570; *Huwer* v. *Dannenhoffer*, 82 id. 499.) Each party might use the devices which constituted the trade-mark, although neither, except by agreement, could use the name of the other. The sale, therefore, of bottles and labels, or the moulds and stamps from which they were made by the defendants to the plaintiffs, indicates nothing in their aid. These things bore the name of the old firm, and articles reproduced from the moulds or stamps would continue to bear them. Upon the assumption that the plaintiffs were to continue the business as successors to that firm, they were of value to them as articles for use, but of no value to the defendant, except as merchandise. So far, therefore, from regarding the sale of those labels to the suc-

cessors of the firm a sale of the exclusive right to use the trade-mark, the omission to mention the trade-mark in any bill of sale or assignment of the labels, or elsewhere, is very persuasive evidence that there was no intention on the part of Caswell to part with his interest in it, or expectation on the part of the remaining partners to acquire it. The trade-mark was a valuable property of the partnership in connection with its proprietary articles, and might very properly, therefore, have been treated as a distinct subject of value to the continuing partners. In *Hall* v. *Barrows* (*supra*) it was held that the exclusive right to use the trade-mark of a partnership was part of the property of the partnership and ought to be included in the valuation. Indeed, it seems to be clearly settled that a partnership trade-mark is an asset of the firm, salable on a dissolution like any other asset. (Lindley on Partnership, vol. 2, 863, 4th ed.) It is so treated in *Huwer* v. *Dannenhoffer* (*supra*), and that case is so much in point that it remains only to look at the transaction between the parties for the purpose of seeing whether Caswell did in fact sell to the plaintiffs his interest in the trade-mark. The business of the firm was transacted in two stores in New York, one in Newport and in an instrument factory, and the firm were also owners of certain proprietary articles, and among others the cologne in question. There was also the trade-mark, which, in connection with that article, is to be deemed of value, certain real estate in Newport, and an interest as lessees of the stores in New York. The adjustment of the interest of the partners in all these things was the subject of negotiation before the termination of the partnership, but no conclusion reached or writing executed until October 7, 1876. They then entered into an agreement by which Caswell was to receive upon actual division one-quarter of the stock in the Thirty-ninth street store, as shown on the inventory of July 31, 1876. The value of the fixtures was to be determined by appraisers and taken by the Hazards, they paying to Caswell his proportion of the appraised value. So with the stock both in the retail and wholesale department of the store in Twenty-fourth street, and the

fixtures. The Hazards alone were to sign in liquidation, collect without charge the outstanding accounts, and pay over to Caswell his proportion thereof. They were to assume the lease of the instrument factory and pay him for his interest in the instrument stock by their note to his order. The agreement provides that the bottle-moulds theretofore used by the copartnership are to become the property of the Hazards for use in their business, and they are to pay Caswell for his interest therein a certain proportion of their value as the same shall be determined " by the several bottle-makers in whose custody such moulds now are." It specifies a sum of money which Caswell shall receive for his interest in the prescription books held by the copartnership, and in regard to the Newport store, declares that it, " including the land and building known as No. 132 Thames street, Newport, R. I., with the stock in trade, and property of every kind, exclusive of the book accounts outstanding July 31, 1876, of the copartnership in Newport, is for the purpose of this settlement valued at $20,000, and for Jno. R Caswell's interest therein, R. N. Hazard is to pay the sum of $5,000. Upon payment of that sum Caswell is to convey to Hazard his undivided quarter of the said building and lot, by deed of warranty, with usual full covenants in form satisfactory to Hazard's counsel, free from incumbrances and from dower right, and to transfer his interest in the said stock in trade and copartnership property in Newport."

Caswell executed the transfer thus called for in reference to the Newport store and copartnership property at that place as above set out; the value of the fixtures and instrument stock was appraised as agreed upon, and paid for. The plaintiffs proved the written statement of Caswell, dated March 12, 1878, that for $54.78 he had sold the Hazards certain " apparatus or utensils," and also a separate statement, under same date, of the sale for $124.31 of his interest " in and to the labels bearing the firm name of ' Caswell, Hazard & Co.,' and ' Caswell, Mack & Co.,' and ' Hazard & Caswell,' on hand July 31, 1876, and a third certificate of sale for $115.39 of his in-

terest in the bottles, excepting ginger ale bottles, bearing these names on hand July 31, 1876, in each case referring to the inventory of that day; also a receipt for $2.66 for certain fruit juices on hand July 31, but until April 4 in public store. These papers show the pains taken to embody even trifling details of the sale and settlement in writing, and as none of them refer to the trade-mark, it may reasonably be presumed the sale of Caswell's interest therein was not intended. It will be seen that no proprietary article, or the right to manufacture any proprietary article, is mentioned, and in view of the fact that just before the dissolution of the firm, and while the relation of the parties to the firm property and the settlement of the affairs of the firm were in the minds of the parties, one of them, Caswell, submitted to the other a proposition, which, as a distinct article of high valuation and sale, included his interest in the proprietary articles, the omission is of great significance. The proposition was not accepted, and, of course, with other attempts at negotiation, is of no other importance than to show what was before the parties and in their minds as matter to deal with, but when we see the particularity with which other items of much less assumed value are mentioned and provided for, the conclusion seems to me unavoidable that the right to manufacture such articles, and among others the cologne in question, was left to be enjoyed by all parties and under any advantages which the trade-mark might confer. Certainly, if this was not so, the plaintiffs, who claim an exclusive right, were bound to establish it by evidence, and in this have failed, not alone according to the weight of evidence, but by failing to produce any evidence showing a transfer to them of such property. It is nowhere named among the articles sold; for it no consideration appears to have been paid. It is plain that its value was not included in the price paid for bottles or moulds, for that was adjusted by the bottle or mould-makers, whose knowledge of value was confined to the thing prepared by them, and had no reference to any thing but that. Nor can the "trade-mark" be implied into any of the other transfers. It was associated with no other article, nor was it

incident to any. Moreover there was no agreement in terms, nor by implication, that Caswell should not carry on business in competition with the plaintiffs; none that he should not manufacture this cologne from the original formula, and as he does not use the plaintiffs' names, or in any manner indicate that the article is manufactured by them, they cannot complain either of him, or of him and others whom he has joined in its manufacture.

Nor is the plaintiffs' claim one which in any aspect is entitled to support from a court of equity. From a formula once the property of both parties, the cologne in question came into favor with the public; without becoming the exclusive owners of the formula, or sole possessors of the art of following it, or of the emblem or device under which as a trade-mark it had acquired reputation, without claiming even an exclusive right to make this cologne, they do claim the exclusive use of the sign or token which, according to their theory, will represent to every one that they are the exclusive manufacturers of it. This would not be true. Each party may and does rightfully prepare and sell it. Neither has the exclusive right to the device or emblem, but each may use it in connection with their own names. The judgment goes upon a different theory, but upon a finding of fact without evidence to sustain it.

In the next place I can find no evidence upon which the plaintiffs can be justified in putting upon the market the article in question under the former firm name of " Caswell, Hazard & Co." Upon the evidence and findings now before us, it might be described as manufactured by them as the successors of that firm, but nothing more. It certainly is not true that the cologne is manufactured by " Caswell, Hazard & Co." and the relief sought by the plaintiffs should for this reason also he denied upon the doctrine lately applied by the Supreme Court of the United States in *Manhattan Med. Co.* v. *Wood* (28 Alb. Law Journal, 89), which deprives the party who makes a material false statement in connection with the property, of any claim to the assistance of a court of equity, or right to maintain the exclusive use of a trade-mark so worded

as to contain a distinct assertion which is untrue, whether it relates to the name of the manufacturer, or the place where made, or other fact from which it had acquired celebrity.

I do not overlook the fact that the plaintiffs undertook to comply with the provisions of the act authorizing in certain cases the continued use of copartnership names. (Laws of New York, 1854, chap. 400.) It does not affect this question. Compliance with the statute by parties entitled to its benefit will enable them to deal with others under the old name, but it enlarges no right of property, nor can it invest them even with intangible rights of property to which a retiring member of the firm had a title. All that depends upon contract, and cannot be affected by their *ex parte* act. We do not think it necessary to determine whether it is in this instance valid for any purpose.

Other questions are raised by the appellants of less importance and which upon another trial may not arise. Upon those already discussed I think the appeal well taken. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur, except RUGER, Ch. J., dissenting; RAPALLO, J., not voting, and ANDREWS J., absent.

Judgment reversed.