Dugro, J.
The plaintiffs complaining on behalf of themselves and of all other members of the “ Cigar Makers’ International Union of America,” show that they are cigar makers and members of the “ Cigar Makers’ International Union of America”; that said union is a voluntary unincorporated association of practical cigar makers, formed for the purposes of promoting the mental, moral and physical welfare of its members, by assisting them to obtain labor at remunerative prices, by affording them pecuniary aid in sickness, and generally to maintain a high standard of workmanship, and ■fair wages of cigar makers; that for the purpose of designating the articles manufactured by members of the union, the union devised and adopted a trade-mark or label to which they gave the name of “ union label,” a fac-simile of which label is attached to the complaint.
That prior to the adoption of said label, the same had not been known or in use in this country or elsewhere, and ever since said adoption the members of said union have been, and are, exclusively entitled to the use of said labels, and the same have been conspicuously pasted on the outside of cigar boxes containing the cigars made by the plaintiffs and other members of the union, on whose behalf the action is brought.
That the said label affixed to cigar boxes is intended *199 as a guarantee that the cigars therein contained are manufactured by members of the union, and that fair wages' and good workmanship have been thereby secured; and that the cigars were not made in tenement-houses or state prisons; and for those reasons the same command a higher price in the market than cigars of a similar appearance, but without said label; and that the use of the said label is a source of great profit to the plaintiffs and others on whose behalf this action is brought.
Plaintiffs further show that the defendant has been and is infringing the exclusive right of the plaintiffs and the other members of the union to the use of the said label, in that defendant, with intent to defraud plaintiffs and deceive the public, has sold, and is offering for sale in New York city, boxes of cigars bearing labels which falsely purport to have been issued by the Cigar Makers’ International Union of America, and which labels are such close imitations of the genuine labels used by plaintiffs, as aforesaid, that they are calculated to and do deceive and mislead the public into the belief that the cigars sold by defendant are manufactured by members of the aforesaid union; and that the labels used by defendant are false and spurious imitations of the genuine labels and trade-mark of the plaintiffs.
Plaintiffs further show that by reason of defendant’s wrongful acts, irreparable damage and injury are caused to them, and therefore they pray for an injunction and account, and for damages.
The defendant, answering on information and belief, denies the use by him of counterfeit labels; he further denies that he has sold, or offered to sell, cigars not made by members of the “ Cigar Makers’ International Union of America ” in boxes bearing labels falsely purporting to have been issued by said union; and for a further defense he alleges as follows: that the plaintiffs are not, nor is the alleged union, manufacturers of cigars in a proprietary sense, or in any right of propri *200 etorship; nor do they, or it, have any right of property, possession or control in cigars made by its alleged members or otherwise ; nor do they, or it, have any interest in, or ownership in, or control over the product of the labor of the several alleged members of said alleged union, or of any of them; nor do they, or it, have any royalty on the manufacture or sales of any cigars, ■whether having said alleged label or trade-mark affixed, or otherwise; nor do they, or it, have any share or interest in the profits of any sales made by any of its alleged members. Defendant, however, does not deny the use by him of genuine union labels on boxes containing cigars manufactured by non-union workmen, or others, not members of the said union.
The affidavits presented by plaintiffs, and a comparison of the genuine and spurious labels, compel me to the view that such a state of facts appear herein as calls for—one question conceded—an injunction pendente lite. The question to which I refer, is that raised by the defendant in his contention, that the plaintiffs are not the owners or manufacturers of cigars, but merely laborers employed to convert the material provided into the article of trade. The defendant’s counsel, on the argument and in his brief, lays great stress on the fact that the label presented in this case does not come within the settled definition of a trade-mark, as he claims it to be.
It is needless to discuss this phase of the case, for the right to the exclusive use of this label may be sustained, although it fail to be a trade-mark in the precise definition of the term as heretofore used. For whether we call the property-right, which I believe the plaintiffs have in the label, a trade-mark, or by another name, is a matter of slight import. It is a right entitled to the' protection of a court of equity on the same principle as that upon which courts have based their right to protect trade-marks and good will. It has been accepted as the rule that the court “proceeds upon the ground that a *201 person has a valuable interest in the good will of his trade or business; and that having appropriated to himself a particular label, or sign, or trade-mark, indicating to those who wish to give him their patronage, that the article is manufactured or sold by him, or by his authority, or that he carries on his business at a particular place, he is entitled to protection against any other person who attempts to pirate on the good will of his friends or customers, or the patrons of his trade or business, by sailing under his flag, without his authority or consent.”
It needs no deep study to perceive that the laborer has the same valuable interest in the good Avill of his labor as a manufacturer has in the good Avill of his trade. Every man has a property right to the result of his labor, and that he has sold this right by a contract for wages, is no reason Avhy he should be deprived of the right to designate the origin of the result of his Avork. That it is impossible to attach to this result any badge or label indicative of origin or interest, unless with the consent of the owner of the physical property itself, does not affect the principle applicable to the case.
If certain laborers who, through a union, in the adoption of and in compliance Avith any set of rules Avhich guarantee or purport to insure a certain class of labor, have thereby increased a demand for their particular labor, and if this union sees fit to designate the labor of the members by any particular symbol, label or sign which is descriptive of the origin or ownership of the labor, such a device as may be adopted is entitled to the protection of a court of equity from fraudulent simulation.
The right to the label seems to me to be a valuable one, for it appears that boxes of cigars to which the label is affixed sell in. the market for a higher price than the same cigars sell in boxes upon which the label does not appear. It is clear that if this be so, the natural result of the use of a fraudulent simulation of *202 this label on boxes of cigars without the authority of the union, is such an injury as entitles them to the protection of the court.
The label of the plaintiffs, used as the symbol of their labor, does not conflict with the rules applicable to trademarks, or any analogous rules, and so, for the purpose for which it is used, it can be considered' proper and entitled to protection.
The plaintiffs are entitled to be protected in the use and value of their property, and as in this case it can be adequately protected only by an injunction, an injunction pendente Hie will issue; order to be settled on notice.
In addition to what is stated in opinion of Judge Dugeo, the complaint, answer and affidavits read before him contained the following, assumed to bear on the question as to the object of the association being illegal and in contravention of public policy:
In the complaint it was alleged that:
u Plaintiffs are severally cigar makers, residing in the United States, and members of the Cigar Makers’ International Union of America, that said Cigar Makers’ International Union of America is a voluntary unincorporated association of practical cigar makers, formed for the purposes of promoting the mental, moral and physical welfare of its members by assisting them to obtain labor at remunerative prices, by affording them pecuniary aid in case of sickness, and generally to maintain a high standard of workmanship and fair wages of cigar makers.”
In the answer it was alleged on information and belief : “ that the plaintiffs are not, nor is either of them, nor is the Cigar Makers’ International Union of America, manufacturers of cigars in a proprietary sense or in any right of proprietorship, nor do they or it have any right of property, possession or control in cigars made by its alleged members or otherwise, nor do they or it have *203 any interest or ownership in or control over the product of the labor of the several alleged members of said alleged union or of any of them, nor do they or it have any royalty on the manufactures or sales of any cigars whether having said alleged label or trade-mark affixed or otherwise, nor do they or it have any share or interest in the profits of any sales of any cigars made by any of its alleged members, but, on the contrary, all employers and owners are excluded from any capability of membership in such alleged association or union. That said alleged union is a combination of workmen to maintain a high standard of wages and to resist the employing class more effectually by union against reductions in wages than can be done in the absence of combination, and that the benevolence of the alleged union is confined to its own membership, and has no thought, or pretense of protecting the public interests or welfare except as they may happen to coincide.” And in an affidavit read in opposition to the motion, it was sworn to by the defendant: “ that the plaintiffs are working cigar makers, and that neither they nor the alleged Cigar Makers’ International Union have any factory, nor do they make cigars for themselves, but only as workmen for other proprietors, transacting no business or trade whatsoever in cigars as makers, dealers, or otherwise. In the year 1886,1 entered into an agreement in writing with certain alleged representatives of local unions of said alleged International Union, to make my factory a union shop and to receive the union labels. I agreed to' pay certain prices according to a scale, and the loca| unions agreed to supply me with labels of the so-called International Union and to admit my employees into the local unions. They broke the agreement ' by refusing to admit any more members, and thereupon the shop was declared no longer a so-called union shop, and no more labels were supplied. No control whatever over the quality of either tobacco or cigars was retained or exercised by said International Union or the local *204 unions, nor had either any proprietorship or interest whatever in the product, business, profit or loss of my factory. The alleged 25,000 and over members of said alleged International Union are employed in several hundred different factories and proprietor,ships scattered all over the United States, of which no two produce similar goods in all respects.”
Johnston & Tilton, attorneys, and Lewis Johnston, of counsel for appellant, argued:
I. The practice of the union in refusing to allow its members to work in the same factory with non-members makes it an unlawful combination, and puts it beyond the protection of the courts of equity. The court is referred to the statute on the subject of labor unions. 3 R. S., 7 ed., p, 2527; Laws 1870, ch. 19;. and Wright on Criminal Conspiracies, pp. 144 to 169; Stevedores Association v. Walsh, 2 Daly 1.
' II. The Cigar Makers’ International Union label is not a trade-mark, or entitled to any protection from the court. Worcester, Webster and Bouvier define a trademark to be “ a particular mark, sign, device, writing or ticket put by a manufacturer upon his goods, to distinguish them from those of others.” See also Brown on Trade-marks, 2d ed., § 537, § 60; Peitz y. Eichele, 62 Mo. 171; Croft v. Day, 7 Beav. 84; Congress and Empire Spring Co. y. High Rock Congress Spring Co., 57 Barb. 526 ; 4 Anuales, 19, 20, 54; Upton on Trademarks, p. 9. A trade-mark must be used to indicate, not the quality, but the origin or ownership, of the article to which it is attached. Newman y. Alvorcl, 51 N. Y. 193; see 2 Pars, on Cont. flth ed.) 351; Matsell v. Flanagan, 2 Abb. Pr. R. JSF. 8. 459; Amoskeag Co. v. Spear, 2 8andf. 599; Samuel v. Berger, 4 Abb. Pr. 88; s. c., 24 Barb. 163; s. c., 13 How. Pr. 342; Holty. Me"nendez, 23 Fed. Rep. 869 ; Collins Company y. Brown, 3 Kay & Johnson, 423 ; s. c., 3 Jurist N. 8. 929 ; Leather Cloth Co. v. Amer. L. C. Co., 11 Lb. 513; s. c., 35 L. *205 J. Chan. 53; s. c., 4 De Gex, Jones & Smith, 137; Blanchard v. Hill, 2 Atkyn’s R. 484.
III. The legislation of the state upon this subject is comprised in sections 364, 366, 368, Penal Code; Laws 1862, chapter 306; amended Laws 1863, chapter 209; also Laws 1878, chapter 401. These statutes all proceed upon the theory of a right growing out of property or ownership in the goods by the owner of the trademark or label.
IV. The label of the Cigar Makers’ International Union is not a trade-mark or proprietary label, because it is not the device or symbol of the manufacturer or a merchant or trader to distinguish the goods from those made or sold by another. This label is indiscriminately supplied by the union to all manufacturers of cigars who employ members of the union exclusively as workmen, and therefore is entirely outside the protection intended to be afforded by law to the device of the manufacturer originated by him and applied to his own products, which is protected because, by his having originated and used it, he is esteemed to have acquired a valuable good will and name with the public which should not be at the mercy of any infringer to destroy. Bisphan’s Principles of Equity (4th ed.),p. 457; Hazard v. Caswell, 93 N. Y. 259; Wolfe v. Burke, 56 Ib. 115; Fetridge v. Wells, 13 How. Pr. 385; Amoskeag Man. Co. v. Spear, 2 Sandf. 599; Ferguson v. D. Mills, 2 Brewster (Pa.) 314; Candee, Swan & Co. v. Berre & Co., 54 Ill. 439.
9V. The purpose and intent of the union are foreign to the interests which the law of trade-marks guards and protects. The real object of the union is to prevent its members from working for less wages than it sanctions, and to compel manufacturers to employ exclusively members of such union under the penalty of being deprived of the patronage of all who are members of or sympathize with labor unions, or in other words being *206 “ boycotted ” by the labor union fraternity. Stevedore’s Asso’n v. Walsh, 2 Daly 13.
VI. The union label is professedly put upon the productions of hundreds, perhaps thousands, of factories, and therefore does not indicate the production of any one of them. It merely indicates that the shop where the cigars are made is a union shop, employs none but union men, and cannot therefore in the nature of things be any guaranty of quality of tobacco, method of curing, flavoring, rolling, bunching, drying or preserving, and only insures that it is not made by a workman taking more or less pay than the union allows. Negatively it purports to assume that the cigars are not made in prisons or in tenement-houses.
VII. The union label does not claim that Mr. Strasser, whose name is affixed to it, or that any other person or concern is the manufacturer of the cigars so labeled. The evident object of the workmen who issue the label to manufacturers is to monopolize the work in shops of the trade of manufacturing cigars to its members, to the exclusion of those entitled to better wages because of greater skill, or of those non-members who because of their necessities are willing to work for less or even the same wages.
VIII. The principle contended for by plaintiffs is one which a court of equity cannot encourage or rightfully protect. It seeks to engraft compulsorily upon the product of the laborer in the hands of his employer an “ earmark ”, of his own which he cannot insist upon against the will of his employer. He may battle and contend for the right. in his contract of service as a condition of service, but he cannot expect courts of justice to insert in his favor compulsorily in his contract of service an implied right to label the goods he produces with any evidence of his workmanship.
Briesen & Steele, attorneys, and Antonio Knauth of counsel, for respondents, argued :
*207 I. The plaintiffs sue as members of an unincorporated association, having such a great number of members that it is impracticable to bring them all into court. Code of Civ. Proc., § 448; Bloete v. Simon, Super. Ct., Special Term. The defendant, by answering instead of demurring to the complaint, admitted the right of the plaintiffs to sue on behalf of the union, and cannot raise objection now on that ground.
II. There is no merit in the objection taken in defendant’s answer, that the members of the union do not own the cigars produced by them or control the manufacture. The label as used by the defendant contains an untruth, calculated to deceive the public, and to rob the members of the union of the fruits of their reputation, which they have successfully labored to earn. The law protects the maker of the commodity as well as the seller, if the article is made for the purpose of trade, and is sold to the public. The label of the union, on its very face, shows that it is to be a guarantee that the cigars sold under it are made by members of the union and not by prisoners, tenement-house workers, coolies or other objectionable and inferior workmen; it is a guarantee of the quality of the goods to the purchasing public. That guarantee is practically destroyed by the doings of the defendant. In such cases the courts will not search for technical obstructions, but enjoin the guilty party on the broad ground that there must be a remedy for the apparent injury done to the plaintiff and to prevent the further deception of the public. Amoskeag Man. Co. v. Spear, 2 Sand. S. C. 599; Matsell v. Flanagan, 2 Abb. Pr. N. S. 459; Gillott v. Kettle, 3 Duer 624; Coats v. Holbrook, 2 Sand. Ch. R. 586; Taylor v. Carpenter, 3 Story 458; Kinney v. Basch, 16 Am. Law Reg., N. S. 596; Anheuser Busch Brewing Assoc. v. Pisa, 24 Fed. Rep. 149.
III. Wherever this label has been before the courts of this country, the court has invariably held that the Cigar Makers’ International Union is' entitled to pro *208 tection against the unauthorized use of it. Bloete v. Simon, supra-, Frantz v. Miller (unreported), Dwyer, J., Superior Ct. of Ohio; Frizzell v. Link (unreported), Phelps, J., Circuit Ct. of Baltimore city.
By the Court.—Sedgwick, Ch. J.
I am of opinion that the plaintiffs, being members of' the Cigar Makers’ International Union, had an interest in the proper use of the labels of the union, which might upon sufficient grounds, be protected by injunction against the inequitable use of those labels.
I also think that it did not appear conclusively, upon the facts presented in the motion below, that the object of the union was illegal or against public policy, and that the finding of the learned judge below on this subject must here be sustained.
There can be no doubt that the defendant had used, and was about to use, counterfeits of the labels.
The order should be affirmed, with $10 costs to the plaintiffs, to abide the event.
Freedman and Ingraham, JJ., concurred.