## BLAKE v. BARNES et al.[1]

### (*Supreme Court, Special Term, New York County.*   December, 1890.)

1. EXECUTORS AND ADMINISTRATORS—SETTLEMENT OF ESTATE—JURISDICTION.
   The special facts relied on by a legatee to oust the surrogate of jurisdiction over the settlement of an estate, and to confer it on the supreme court, must be not merely alleged, but proved.
2. SAME—ACCOUNTING.
   Before the supreme court will direct an accounting of the estate before a referee, it must determine whether the special facts relied on to oust the jurisdiction of the surrogate are established by competent proof; and, where such facts are not established, it will leave the accounting to be supervised by the surrogate.
3. PARTNERSHIP—RIGHTS OF SURVIVING PARTNER—FIRM NAME.
   In the absence of any provision in the articles of co-partnership, the right to use the firm name, on the dissolution of the firm by the death of one of the partners, is not a part of the good-will of the business in which the estate of the deceased partner is entitled to share, but it belongs solely to the surviving partners.
4. SAME—CONSTRUCTION OF ARTICLES.
   Under the articles of a copartnership engaged in the publishing business, which provide that on the death of a partner the surviving members shall have the right to continue the business on making payment, at a specified rate, for the "plates, engravings, publishing, patent and copyrights, good-will, etc.," the right to continue the business in the firm name passes to the survivors as part of the "good-will" contemplated by the articles.

Action by Sarah Frances Blake against Alfred C. Barnes and others, for the settlement of the estate of A. S. Barnes, deceased.   For opinion on motion to make complaint more definite and certain, see 9 N. Y. Supp. 933.

*C. Bainbridge Smith*, for plaintiff.   *Flamen B. Candler, Henry W. Johnson*, and *Robert W. Candler*, for defendants.

BARRETT, J.   The only question upon which I reserved my judgment was as to the appropriation of the firm name.   The other claims upon which we are asked to pass by the surrogate's court, and to assume general jurisdiction of an ordinary accounting by executors, are entirely unsubstantial.   Some of them are plainly frivolous, and all of them have been put forward seemingly for the purpose of evading the general rule that a court of equity will not take cognizance of an action for the settlement of an estate disconnected with

---

[1] For opinion of general term, see post, 354.

the enforcement of a trust, unless special reasons are assigned, and facts stated to show that complete justice cannot be done in the surrogate's court. *Chipman* v. *Montgomery*, 63 N. Y. 222; *Hard* v. *Ashley*, 117 N. Y. 606, 23 N. E. Rep. 177. In her complaint, the plaintiff does not directly attack the assignment to A. S. Barnes & Co. of her legacy. She proceeds as though that assignment had not been made, and, when the defendants set it up in their answer, she replies, attacking it upon the ground of fraud, and asking for still other reasons that it be treated as inoperative. Without considering the question whether the complaint should not have affirmatively shown the special reasons and facts which would prevent the surrogate from doing complete justice in this particular, I am bound to find that the plaintiff has failed to establish the facts upon which she seeks to avoid the assignment, and that the issue on that head made up by the answer and reply must be decided adversely to her contentions. Nor is it necessary to consider the question of the jurisdiction of the surrogate with regard to the special facts set up in the complaint, upon which our powers as a court of equity are invoked, for the reason that the plaintiff has wholly failed to establish the claims made by these allegations. It is not enough to allege special facts which would oust the surrogate, and justify resort to our jurisdiction. Such facts must be true, and should be established by competent testimony. The rule cannot be evaded by mere assertion. These observations apply to the charges with regard to the insufficiency of the rents of 111 and 113 William street, and of the factory in Brooklyn; also as to the engines, boilers, etc., in the Brooklyn factory; also as to the claim against the firm of Knight, Loomis & Co., the charge of usury in the $70,000 note, and of fraud in the request of June 19, 1888, to pay certain notes of F. D. Blake & Co. It is urged that these matters should not now be passed upon, but that an accounting should be directed before a referee, and all claims reserved until the final hearing upon the referee's report. This argument overlooks the rule that an accounting should not be ordered until the special facts which justify the passing by of the surrogate's court are established. If any such fact is established, then the court, as a court of equity, will assume jurisdiction of the estate, and of the general accounting. It will not limit the relief to the single fact which appropriately brought the case within its jurisdiction. Having commenced, it will proceed to the end, and do all that justice requires. As was said in *Wager* v. *Wager*, 89 N. Y. 168: "If the court has obtained jurisdiction for the purpose of establishing the equitable right of the next of kin to the personal estate, that carries with it jurisdiction to adjust the whole controversy." If, however, not a single fact is established which calls for the exercise of our jurisdiction, the court should dismiss the complaint. It will not, after finding every such fact adversely to the plaintiff, direct the ordinary accounting which the surrogate is competent to supervise.

This brings me to the consideration of the question as to the appropriation of the old firm name. If this name was properly an asset of the estate in which the plaintiff was entitled to share, and she has been deprived of such share, then the claim of the executors and of the members of the new firm would bring the case within the principle enunciated in *Wager* v. *Wager*, *supra*. It was there held that any person claiming an interest in the personalty as legatee under the will may, when the executor claims such interest in his own right, bring suit against him to settle the construction and ascertain the validity of the provisions of the will so far as the plaintiff's interest is concerned, and to enable him to obtain from the executor such portions of the estate as he is legally or equitably entitled to. This proceeds upon the jurisdiction of equity over trusts, and upon the theory that an executor is always a trustee of personal estate, although no express trusts are created by the will. I have therefore examined the question thus presented, and I am of opinion that upon the special facts of this case, the firm name passed to the

surviving members of the old firm as part of the good-will of the business under the settlement contemplated by the articles of copartnership. This, too, would have been the result, apart from the articles of copartnership. Upon this question the language of RUGER, C. J., in *Caswell* v. *Hazard*, 121 N. Y. 484, 24 N. E. Rep. 707, is unmistakable. The learned chief judge observed: "We are also of the opinion that the present defendants have, as the legitimate successors of the firm of Caswell, Hazard & Co., lawfully acquired its right to use that name as a firm name. At common law it was undoubtedly the right of such members of a dissolved firm, having an established reputation for the character and quality of the goods manufactured by them, who desired to continue such business, to continue the former firm name, and transact business thereunder, although none of such parties bore the names contained in the original firm. *Leather Cloth Co.* v. *American Leather Cloth Co.*, 4 De Gex, J. & S. 143, 11 H. L. Cas. 534." This is in accordance with the views of the text-writers, and with the English authorities. Mr. Story says that the right to use the name of a known and celebrated firm does not fall within the true character and nature of good-will, but that it belongs to the surviving partner. Story, Partn. (5th Ed.) § 100, and note. So in *Lewis* v. *Langdon*, 7 Sim. 421, the vice-chancellor said: "I cannot but think, where two partners carry on a business in partnership together under a given name, that during the partnership it is the joint right of them both to carry on the business under that name, and that, upon the death of one of them, the right, which they before had jointly, becomes the separate right of the survivor." See, also, Colly. Partn. (8th Amer. Ed.) §§ 162, 163, and note; *Hammond* v. *Douglass*, 5 Ves. 539; *Crawshay* v. *Collins*, 15 Ves. 227; *Webster* v. *Webster*, 3 Swanst. 490. The cases where a different view may seem, upon a cursory examination, to have been taken are not really in point. They were cases either of trade-marks or of good-will arising between vendor and vendee or between the living survivors of a dissolved firm. *Dougherty* v. *Van Nostrand*, Hoff. Ch. 68; *Howe* v. *Searing*, 6 Bosw. 354; *Bininger* v. *Clark*, 10 Abb. Pr. (N. S.) 264. There can be no doubt that trade-marks and good-will are important parts of the property of a firm, and that, upon a dissolution, each of the members is entitled to share therein the same as in other assets; and it may well be that while upon such dissolution each party might use the devices which constitute the trade-mark, "neither, except by agreement, could use the name of the other." *Hazard* v. *Caswell*, 93 N. Y. 259. But that is not the question in the present case. The question here is as to the effect of a dissolution by the death of one of the members of the firm. The weight of authority on that specific question certainly favors the defendants' contention, namely, that while the good-will is concededly an asset, the right to continue the business under the old firm name belongs to the surviving partners. It is true that a statute of the state passed in 1833 forbade the transaction of business in the name of a partner not interested in the firm. Laws 1833, c. 281. In 1854, however, a statute was enacted, (chapter 400,) permitting surviving partners of firms having relations with foreign countries to continue the use of a copartnership name on complying with certain formalities. This privilege has now been extended to all copartnerships in this state who have transacted business therein for a period of three years or upwards. These statutes, it may be said, confer no right, as between the parties, and simply modify *pro tanto* the penal provisions of the act of 1833. But the executors of A. S. Barnes could not confer upon a purchaser the right to use the old firm name. And even if, as between themselves and the surviving members of the old firm, they could do so, these statutes indicate very clearly that such a purchaser would buy nothing but the right to commit a misdemeanor. The only persons who, under the act, are permitted to continue the use of the old firm name are the surviving partners who may continue the business, (or any of them,) their assigns or appointees.

· So much for the question, considered apart from the special facts of this case. Let us now look at it in the light of those special facts. The eleventh clause of the articles of copartnership reads as follows: "(11) In the case of the death or withdrawal of any partner before or at the expiration of this agreement, the basis of settlement shall be an exact valuation of the material, property, stock, machinery, and accounts, as per inventory, made as follows: '(*a*) The salable merchandise shall be taken at net cost, and the accounts which are not yet due at their face. (*b*) Accounts overdue at a fair estimate, to be determined, if necessary, by arbitration, or, at the option of the retiring partner, to be collected by the firm for the benefit of all concerned, and paid *pro rata* as realized. (*c*) Available machinery which the firm can still use, at one-half cost; rejected machinery or any other property or merchandise for which the firm is not willing to allow the valuation inventoried, or hereinbefore provided for, at the price offered by the highest bidder. (*d*) For the stereo and electrotype plates, engravings, publishing, patent and copyrights, good-will, etc., a sum equal to the gross profits of the firm for the last two complete business years preceding the time of settlement.' By 'gross profit' is meant the net profit as exhibited by the balance sheet, with the addition of all the expenses incurred to increase the sale of the books, and to extend the business, which is to be considered as an investment; but store expenses, and the necessary cost of handling the stock and distributing it as merchandise, is to be considered a part of the costs of the stock, and is not included in the gross profits. Should a revaluation on the above basis be necessary, each partner shall be credited with any surplus or debited with any deficiency which may appear in consequence in the proportion of his shares, namely, on the same basis as a division of profits." It seems clear that the right to continue the business under the old firm name was covered by the expression "good-will, etc.," as used in the above subdivision *d*. There is here no limitation or qualification whatever. A. S. Barnes & Co. was a publishing house, and the firm name naturally appeared upon the stereo and electrotype plates, and upon the publications of the firm. How was it possible, under these provisions, to exclude the firm name from the consideration of the good-will? The two things were under such circumstances quite inseparable. Good-will is spoken of in immediate connection with stereo and electrotype plates, engravings, publishing, patent and copyrights, and it is apparent that all these were necessarily impressed with the firm name. As matter of fact, too, the firm name was actually taken into consideration by the expert who was employed with the consent of all parties to ascertain and report the value of the testator's interest in the firm, and whose report was subsequently ratified by the plaintiff and all the other heirs. My conclusion is that the plaintiff has no just cause of complaint with regard to the firm name, and, consequently, that her action must fail, as there is nothing left in the controversy which cannot be properly adjudicated in the surrogate's court; that is, nothing save the ordinary accounting of the executors, and as to that we should decline to proceed further. The complaint must, therefore, be dismissed, with costs to the defendants represented by Mr. Candler, to the defendant represented by Mr. Johnson, and to the guardian *ad litem*, without prejudice to proper proceedings in the surrogate's court, except so far as the facts here passed upon may be *res adjudicata*.