JOHN R. CASWELL AND WILLIAM MASSEY, AS SURVIVORS OF CASWELL, MASSEY & CO., RESPONDENTS, v. ROWLAND N. HAZARD, JOHN C. HAZARD AND HERBERT HAZARD, APPELLANTS.

*Sale of the interest of one partner in the business and good will of a firm — right of the purchaser to use the retiring partner's name — effect of laches upon an action to restrain its use.*

In an action brought to restrain the defendants from using the name of Caswell in their firm name or business designation, it appeared that, on July 1, 1872, Philip Caswell, Jr., retired from a firm, which consisted of himself, Rowland N. Hazard and John R. Caswell, and sold his one-half interest and all his "right, title and interest in and to the business, stock, fixtures, book debts, notes, proprietary articles, bills, prescriptions, private formulas, manufactures, things in action, account books, papers, vouchers, leases, real estate and good will, and other property and assets whatsoever of and belonging to the said firm of Caswell, Hazard & Co.," and his interest in the lease of the stores of the firm in New York, and in the real property belonging to it at Newport; and also agreed that he would not, within the space of twenty years from the date of

the agreement, go into business as a druggist or apothecary in New York or Newport, or manufacture, or cause to be manufactured, any of his private prescriptions or proprietary articles theretofore the property of the firm. John C. Hazard was thereupon admitted to the firm in Philip Caswell, Jr's. place, and the business was continued, under the name of Caswell, Hazard & Co., until 1876, when John R. Caswell withdrew and went into business with William M. Massey under the firm name of Caswell & Massey, the defendants Hazards continuing business as Caswell, Hazard & Co., until 1886, when the present action was brought.

*Held,* that, authority to use the name of Caswell, in connection with the business, might fairly be implied from the terms of the instrument and its manifest purpose.

*Banks* v. *Gibson* (34 Beav., 566) followed; *Morgan* v. *Schuyler* (79 N. Y., 490); *Hazard* v. *Caswell* (93 id., 259) distinguished.

That this conclusion was confirmed by the following facts: 1st. That immediately after Philip Caswell, Jr., went out, the three partners who went on with the business made, filed, and caused to be published a notice, under chapter 400 of 1854, providing for the continued use of a copartnership name after the retirement of a copartner. 2d. That the plaintiff Caswell, when he left the firm, sold to Hazard a considerable quantity of bottle molds and labels bearing the partnership name of Caswell, Hazard & Co., which were of no substantial value except to persons using said firm name; and 3d., the laches of the plaintiff John R. Caswell in bringing this suit.

That a judgment restraining the defendants from using the name of Caswell in their firm name or business designation should be reversed.

APPEAL from a judgment of a Special Term entered in the office of the clerk of the city and county of New York on February 28, 1887, as amended or resettled by an order entered March 18, 1887, restraining the defendants from using the name of Caswell in their firm name or business designation.

*H. H. Anderson,* for the appellants.

*W. H. Arnoux,* for the respondents.

BARTLETT, J.:

From 1867 to 1872, Rowland N. Hazard, Philip Caswell, Jr., and John R. Caswell, were copartners carrying on business as druggists and apothecaries in the city of New York, and at Newport, R. I., under the firm name of Caswell, Hazard & Co. Philip Caswell, Jr., owned an interest of one-half in the business, Rowland N. Hazard one-quarter, and John R. Caswell one-quarter. On July 1, 1872, Philip Caswell, Jr., retired from the firm, and sold to Rowland N.

Hazard all "his aforesaid right, title and interest in and to the business, stock, fixtures, book debts, notes, proprietary articles, bills, prescriptions, private formulas, manufactures, things in action, account books, papers, vouchers, leases, real estate, and good will and other property and assets whatsoever of, and belonging to the said firm of Caswell, Hazard & Co." In the same agreement by which he made this sale, he transferred his interest in the lease of the stores of the firm in New York, and in the real property belonging to it at Newport, and agreed that he would not, within the space of twenty years from the date of the agreement, go into business as a druggist or apothecary in New York or Newport, and would not manufacture, or cause to be manufactured, any of his private prescriptions or proprietary articles theretofore the property of the firm. John C. Hazard was thereupon admitted to the firm in the place of Philip Caswell, Jr., and the business was continued under the name of Caswell, Hazard & Co. until 1876, when the the copartnership was dissolved by the withdrawal of John R. Caswell, who went into the drug business with William M. Massey, under the firm name of Caswell & Massey. Meantime the defendants Hazard continued business as Caswell, Hazard & Co. until 1886, when the present action was brought to restrain them from using the name Caswell in any manner in their firm name or business designation. There is, in fact, no person by the name of Caswell in the defendants' firm. To justify themselves in the use of that name, however, the defendants rely chiefly upon the aforesaid purchase in 1872 by Rowland N. Hazard from Philip Caswell, Jr., of his half interest in the business including the *good will.* They make no claim of any right to continue to employ the name of John R. Caswell, but urge that their right to use the name Caswell is derived from Philip Caswell, Jr., under the written agreement from which I have already quoted, and that, therefore, John R. Caswell cannot interfere with it.

The legal proposition put forward in support of this part of their case is that the sale or other transfer of the good will of a partnership carries with it the right to use the firm name. Authority to this effect is to be found in England in the case of *Banks* v. *Gibson* (34 Beav., 566), where it was held that the firm name was an asset of the partnership, and that if the whole concern and the good will

of the business had been sold, the name as a trade-mark would have been sold with it. "If by arrangement," said the master of the rolls (Sir JOHN ROMILLY), "one partner takes the whole concern, there must be a valuation of the whole, including the name or style of the firm. But if the partners merely divide the other partnership assets, then each is at liberty to use the name just as they did before. It is the same as if two persons, who alone carried on the business of Child & Co., thought fit to separate, each would be entitled to use the name by which they carried on their business." The broad rule laid down in this English decision, however, has not been sanctioned to its full extent by the courts of this State. (*Lathrop* v. *Lathrop*, 47 How. Pr., 532; *Morgan* v. *Schuyler*, 79 N. Y., 490, 494.) In the case last cited, the parties were partners in the business of dentistry. On the dissolution of the firm the defendant purchased a portion of its property and assumed payment of the rent of the premises previously occupied by both partners. It was mutually understood that the plaintiff was to continue business as a dentist in the same city, and there was nothing in the agreement of dissolution which transferred the good will of the firm to either of the parties. Upon these facts, the Court of Appeals held that the defendant had not become entitled to continue the use of the firm name or to hold himself out as the successor of the firm. In the course of the opinion DANFORTH, J., after citing three of the cases referred to by the counsel for the appellant, says that the good will in question "was that only which pertained to the place of business, and no case holds that the good will included the right to a continued use of the name of the firm." On the present appeal the respondent relies strongly upon this language as decisive to the effect that no sale or transfer of the good will of a copartnership, even though it comprise that which pertains to the business itself, as well as to the place of business, can convey a right to employ the firm name.

I am inclined to think, however, that this is too broad a construction of the words used by the learned judge, and that his meaning was only that such good will as attaches merely to the place of business has never been held to include the right to use the firm name, for, as we have seen in *Banks* v. *Gibson* (*supra*), the master of the

rolls expressly decided that where both the whole concern and the good will were sold, the name as a trade-mark went with it. But I do not think it is at all necessary to go as far as this English decision goes in order to maintain the right of the appellants to use the name of Philip Caswell, Jr. It will be observed that, by his agreement with Rowland N. Hazard, he did much more than merely to transfer his interest in the good will belonging to the firm's place of business, and belonging to the business itself. He sold to Hazard half of all the property of the firm and engaged, on his part, not to transact the same business for twenty years to come. It is quite apparent that the value of this transfer would be greatly lessened if it did not carry with it the right, in any manner, to use the name of Caswell in connection with the business. In my opinion authority to use such name may fairly be implied from the terms of the instrument and its manifest purpose. Under the statute which provides for the continued use of a copartnership name, after the retirement of any of the copartners (Laws of 1854, chap. 400), the defendant Rowland N. Hazard, by filing and publishing the proper certificate, could have continued to employ the name of Caswell without imposing any risk or liability upon Philip Caswell, Jr.; and, in fact, it appears that immediately after Philip Caswell, Jr., went out and John C. Hazard was taken into the firm in his place, the three partners who went on with the business, that is to say, Rowland N. Hazard, John R. Caswell and John C. Hazard, did make, file and cause to be published a certificate under this act. It is impossible to perceive what purpose there was in making this certificate unless it was to continue to use the name " Caswell " as belonging to Philip Caswell, Jr., inasmuch as the names of the three persons constituting the new firm were such as to entitle them to call themselves Caswell, Hazard & Co. without filing any certificate whatever. This act, therefore, must be regarded as, to some extent, an acknowledgment, on the part of John R. Caswell, that Rowland N. Hazard had acquired, under his agreement with Philip Caswell, Jr., the right to use his name.

But it may be said that these views are in conflict with the intimation of the Court of Appeals in the trade-mark case of *Hazard* v. *Caswell* (93 N. Y., 259, 268), wherein it was said there was no evidence to justify the Hazards in putting certain cologne water

upon the market under the firm name of Caswell, Hazard & Co. " Upon the evidence and findings now before us," said the court, " it might be described as manufactured by them, as the successor of that firm, but nothing more."

There is nothing to show, however, that the right of the Hazards to use the name Caswell was the subject of discussion by counsel before the court in that case, or that any particular attention was therein directed to the agreement between Philip Caswell, Jr., and Rowland N. Hazard, upon which so much depends in the present litigation. I am unwilling, therefore, to treat this intimation as at all conclusive upon the principal issue in the present suit. It should be noted that the decree herein is even more stringent than the language there used would warrant, for it debars the defendants from even describing themselves as the successors to the firm of Caswell, Hazard & Co., whereas Judge Danforth clearly upholds their right so to do. It is not disputed that when the plaintiff Caswell left the firm in 1876, he sold to the Hazards a considerable quantity of bottle molds and labels bearing the partnership name of Caswell, Hazard & Co., and the trial court has found that these articles were of no substantial value except to persons using said firm name. This fact tends to sustain the conclusion that the continued use of such name by the Hazards was with the assent of the plaintiff. It seems pretty harsh to hold that a man can sell to another goods bearing his name, and which would be rendered valueless by the removal of his name therefrom, and to hold, at the same time, that the vendor can restrain the vendee by injunction from using such goods so long as the seller's name remains thereon.

The laches of the plaintiff, John R. Caswell, in bringing this suit is also a circumstance of much significance. He knew that the defendants were carrying on business under the name of Caswell, Hazard & Co., and yet nearly ten years elapsed before he took any legal steps to restrain them. Meantime they expended large sums of money in advertisements of their business, using therein the name of Caswell, Hazard & Co. It is true that John R. Caswell testifies that he often told Rowland N. Hazard he had no right to the name Caswell. He fixes the last interview he had on the subject as having occurred in 1878, and says: " I told him I should proceed against him in law if I could not get any settlement in my matters,

and one thing led on to another, and finally I told him that he had no right to use the name Caswell. He was using my name and my money to do the business." Mr. Hazard denies that any such conversation took place, or that Mr. Caswell ever objected to the continued use of the name Caswell by the defendants' before the institution of the present suit. Upon this conflict of testimony the trial court found in favor of Mr. Caswell. Nevertheless, the fact remains that he permitted the defendants to go on calling themselves Caswell, Hazard & Co., and to spend large sums in advertising under that designation, from the time of the interview in 1878 to the time of the commencement of this action in 1886, without further protest or interference on his part; a course of conduct hardly consistent with the existence of any serious claim that they were violating his rights in making use of the name Caswell.

For the reasons which have been given, the judgment should be reversed and a new trial granted, with costs to abide the event.

Van Brunt, P. J., and Macomber, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide the event.