(44 App. Div. 605.)

### CUTTER v. GUDEBROD BROS. CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1899.)

1. INSOLVENT CORPORATION — ASSIGNMENT FOR CREDITORS — ASSETS — TRADE MARK AND TRADE-NAME—ASSIGNEE'S RIGHTS.

An assignment by an insolvent silk-manufacturing corporation for the benefit of creditors does not carry with it to the assignee its exclusive right to the use of a trade-mark and trade-name of one of its incorporators, so as to entitle the assignee to sell such right as against the original owner.

2. SAME.

The right to vend property assigned for the benefit of creditors passed to the assignee, though a trade-name thereon, which his assignor, a corporation, was entitled to use exclusively, did not, but the right is limited to the property in existence.

3. SAME.

A manufacturer of spool silk, who had acquired an extensive reputation, transferred to a corporation, which he had organized to continue its manufacture and sale, a quantity of spool cabinets bearing his name burned therein, for distribution among retail dealers. They were so constructed that to remove the name would destroy their value as property. Held, that as he had voluntarily devoted the cabinets, with the name thereon, to the use of the corporation, with the right to sell the same, the corporation's assignee for the benefit of creditors acquired the same right, and a purchaser from him was entitled to be protected in their use.

4. USE OF CORPORATE NAME—RIGHT TO ENJOIN.

Where a spool-silk manufacturer merged his business into a corporation, giving it his name, he could not enjoin the use of the corporate

61 N.Y.S.—15

name by others, there being nothing in the character of the article produced conveying the idea of personal ability and knowledge in its production superior to ordinary artisans skilled in the trade, so as to mislead the public to believe it was purchasing the results of his personal skill.

Appeal from special term, Kings county.

Injunction by John D. Cutter against Gudebrod Bros. Company to restrain the use of trade-names. From a judgment in favor of plaintiff, defendant appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

G. H. Crawford, for appellant.
Robert B. Honeyman, for respondent.

HATCH, J. When this case was before us upon a former appeal (36 App. Div. 362, 55 N. Y. Supp. 298) we held that the plaintiff had a property right in his own name, of which, under the circumstances, he could not be deprived, and of which he might avail himself for the purpose of business use without infringing the right of any other person or corporation. We also held that the defendant acquired no title to the name of the plaintiff of which it might make use as a trade-name, except so far as it obtained the right to vend the spools of silk which were manufactured by the corporation, and other property purchased by it. The exception proceeded upon the ground that, as the purchase was made of the property of the corporation, the right to again sell passed with the purchase, and, the manufacture being in fact Cutter's, there could be no misrepresentation. The former decision, therefore, is limited to these particular questions, and cannot be regarded as authority for anything beyond. The judgment which has been rendered restrains the defendant from using the word "Cutter" upon or in connection with silks or products of any kind not manufactured by or under the direction of the plaintiff, and from in any other manner or form using the plaintiff's name, except to sell the spools of silk which the defendant purchased of the agents of the corporation and of the assignee. The profits which have been earned by the use of the word "Cutter" are directed to be paid over to the plaintiff, together with such damages as the plaintiff may have sustained by such use of his name; and a reference is ordered for the purpose of arriving at the amount of these sums. The very full discussion which the case has already received renders further elaboration of the facts unnecessary. We are only required to dispose of the questions so ably presented by the learned counsel for the defendant, and these, for the most part, are questions of law. It is the conceded fact that there exists no formal written transfer by John D. Cutter to the corporation conferring upon the latter any right whatever to use his name, as a trade-mark or otherwise, in and about the business carried on by it. The agreement which was made by the members of the firm of John D. Cutter & Co. with the creditors of the Cutter Silk Manufacturing Company is the only one in which the trade-names were particularly specified; but neither the corporation nor the defendant was a party to that agreement,

and can take nothing thereby. In its last analysis, the defendant's claim to the right to use the plaintiff's name in its business is founded upon some supposed equitable considerations, which confer an equitable right, rather than upon a legal obligation created by contract to do or not to do a particular thing. The argument is supported by authority arising out of the determination of individual corporate rights, wherein the contending parties supported their claims based upon a contract expressed or implied, and the courts have disposed of the questions involved by asserting a right, the product of a contract, or restraining an act the commission of which would operate as a fraud, either actual or constructive. In the present case, for the purposes of the argument, we may concede (without deciding) that when John D. Cutter & Co. transferred its business and the property to the corporation, and the stockholders subscribed for its stock based upon the representation of Cutter and in the belief that all of the trade-marks and trade-names of Cutter & Co. had been transferred to the corporation, an equitable estoppel might exist in their favor and in favor of the corporation against Cutter, under the operation of which he would be denied a right either to start a business in competition with it, or withdraw from the concern his name and trade-marks, or prohibit their use. We may go further, and for the same purpose admit that, as between Cutter, the corporation, and its stockholders, the former was under a binding obligation to allow the use of his name and trade-marks by the latter so long as such business was carried on by the corporation as a going concern. But these concessions, as we view the case, would not inure to the benefit of the defendant. It was not interested in the corporation, either as a stockholder or otherwise, and no representation was made to it by Cutter or by any other person aside from what appeared in the articles of incorporation and the acts thereunder. Its only interest was as a purchaser of the corporate property from the assignee, and the most it could possibly obtain by such purchase was the property which the corporation owned, and such rights as to which it held title. It obtained none of the individual property of the stockholders, as to name or otherwise, nor could it obtain any right as a right of property which existed in favor of the corporation or its stockholders, as a personal right to it or them created by law, to prevent the working of a wrong. Such a right is not a property right; it is a protection which equity gives to the individual or corporation, and is personal alone. As the defendant has not been led to purchase by reason of any such condition, so no basis exists upon which the rule of law can be founded in its favor. Bigelow, Estop. (5th Ed.) p. 597. When, therefore, this corporation made its assignment for the benefit of creditors, both it and its stockholders ceased longer to have any personal interest which was the subject of protection in the name of John D. Cutter, or in the particular trade-marks, names, or letters which he had formerly used, and which were continued to be used in the corporate business. Under the circumstances of this case it is quite apparent that whatever right the corporation or its stockholders obtained in and to the

trade-names of the plaintiff ceased with the assignment, as it is not made to appear that thereafter they possessed any right which could be prejudiced by restoring to the plaintiff his name and trade-marks, whether the former right of use be called a license, or whether it rested upon a higher right, and a more secure basis. The transfer made by the assignee was such right as the operation of law vested in him, and this could not embrace either knowledge or name, in the absence of an agreement of transfer sufficient for that purpose. The decisions cited upon the former appeal sustain this doctrine. There are no equitable considerations arising out of the use made by Cutter of his name in the business of the corporation to which the defendant can lay any claim. It was not a party thereto. It knew, or ought to have known, that there was no written transfer; and it was chargeable with knowledge that such right would not pass as a property right, in the absence of an unequivocal transfer. The fact of use did not convey such knowledge, as it was entirely consistent with a revocable license. It follows, therefore, that the name of the plaintiff did not pass by the sale made by the assignee, and that the defendant acquired no right thereby to the use of such name, or of the marks and symbols which were usually adopted in connection therewith.

This brings us to consider what property and right passed to the assignee by virtue of the assignment. That the tangible property so passed we have already held, and with such property passed the right to vend the same, even though the name of John D. Cutter appeared thereon. So far as the spools containing this name upon the end are concerned, the right was limited to vending those then in existence, and did not carry with it the right to continue the use of the name upon the spools manufactured and vended by the defendant. The cabinets which were the property of the corporation at the time of the assignment stand upon a different footing, and the right of their use rests upon a different basis. They were used by retail dealers for holding spools of silk. They consisted of a little case, with a number of shallow drawers, containing the spools, arranged for their convenient display. Upon the front of the cabinet, and burned into the wood, were the words "Cutter's Spool Silk." The cabinets were of different sizes, but all were similar in design, were used for the same purpose, and all had upon them the quoted words. It is quite evident that use of these cabinets could not be made without use of the name burned thereon. To remove this name would destroy the cabinet, either in whole or in part. To cover it up would doubtless destroy its appearance, and, as much of its value consists in a tasty air, as it was constructed for the purpose of display, it is easily seen that any change would tend to destroy its value as property. Aside from any consideration of the passing of this name as property under the assignment, it is clear that the plaintiff, when he transferred these cabinets to the corporation, transferred them in their entirety as they were. The name was so far a part of the physical property as not to admit of severance, and, as this transfer was the voluntary act of the plaintiff, we think he must be held to have devoted the use of the

cabinet, with the name upon it, to the use of the corporation, and that the transfer of the cabinet, either by assignment or sale or by operation of law carried with it the right of use of the same in the same condition as it was used by the corporation. Caswell v. Hazard, 121 N. Y. 484, 24 N. E. 707; Id., 50 Hun, 230, 2 N. Y. Supp. 783. As the assignee took the title to this property, he acquired the right to sell the same in the same condition as he received it, and the purchaser is to be protected in its use. Intangible rights of property as trade-marks and trade-names are recognized in the law as constituting property, and pass, under an assignment for the benefit of creditors, to the assignee, subject, however, to certain exceptions. Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769; Hegeman v. Hegeman, 8 Daly, 1; Warren v. Thread Co., 134 Mass. 247. The exception, so far as important to any question arising in this case, in which the name does not pass, is where the pecuniary value of the name is so far derived from the personal skill or knowledge of the person, or the qualities of the article produced are inseparable from the personality of the producer in such sense that the general public is led to believe that the product is a product of the particular person whose name is used. Under such circumstances the right of use of the name does not pass, for the reason that the public would be misled and deceived, and the particular person be defrauded. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490. In the present case the name of the corporation was the "Cutter Silk Manufacturing Company." The plaintiff did not transfer this name to the company from the property of John D. Cutter & Co. This was a name adopted for the corporation, and it belonged to the corporation quite independent of any right which the plaintiff possessed, and quite independent of any property which either he or his company transferred. This name was a property right, and it belonged to the corporation as much as the name of John D. Cutter belonged to him. The former decision made the basis of the plaintiff's injunction to depend upon the fact that the use of his name tended to mislead the public by conveying the belief that they were obtaining goods manufactured by or under the supervision of John D. Cutter, and that thereby the public might be deceived and defrauded. This reasoning had reference to the name and initials of the plaintiff as they were used upon the ends of the spools. The question was not considered in connection with the name of the corporation, and in this aspect it is quite different. No matter what might be the plaintiff's attitude to the corporation, whether he remained a member of it or was in active hostility to it, having once used and christened the corporation with this name, he forever remained powerless to prevent its use by the corporation as a going concern.

While much may be said in favor of the fact that the defendant acquired the right to advertise itself as the successor of the corporation by reason of its purchase from the assignee, yet we do not find it necessary to determine such question. It is not clear that the assignment worked a dissolution of the corporation. Probably it did not. But whether it did or not is not presently of consequence.

The corporation had the right to the use of its name, and, as we shall presently show that the general public could not be misled by such use, it alone is interested in the question. The plaintiff is not concerned with such matter, and has no standing to champion the corporation's cause. He, having allowed the use of his name with which to baptize the corporation, cannot complain of those who thereafter make use of it, unless he is in some measure defrauded, or the public is deceived; and, as he could only be defrauded in connection with a fraud upon the public, such consideration alone becomes of consequence. The public could only be deceived by supposing that the manufactured article was the product of the plaintiff, made by him, or under his supervision. When Cutter merged his business into a corporation, he thereby parted, in a considerable sense, with his individuality. It was saved only by using his name as a part of the corporate name, but this was not so used as to indicate the personal product of his skill. We do not find in the record that plaintiff's manufacture was by any particular formula or any secret process. It was care in manufacture, and such care produced a standard article known to the trade. There is nothing in the character of the article produced which conveys the idea of personal ability and knowledge in its production superior to that possessed by the ordinary artisans skilled in the trade. If plaintiff had died, the business might have been carried on under the same name, with no thought by any person that the public was being misled and defrauded into the belief that they were purchasing the results of plaintiff's personal skill. The frequency of the continued use of such names in connection with a standard article of manufacture, long after the original founder has passed away, is practically conclusive of the fact that the public come to understand that the name has no personal significance except as an indicator of the standard character of the article, which may be either good or bad. The name fixes the kind and quality of the article, and is not understood as designating the person. Hoxie v. Chancy, 143 Mass. 592, 10 N. E. 713; Leather-Cloth Co. v. American Leather-Cloth Co., 11 Jur. (N. S.) 513. The fact that a corporation was formed for the purpose of manufacture conclusively presumes a management of the business independent of any one person. The corporation is managed by officers and agents. Its life is not measured by that of a particular individual, and it contemplates that its business will be carried on as the will of the stockholders shall be made manifest by their votes. This creates a condition where the founder may cease to have any connection with the business, even though it bears his name; but the right of the corporation to conduct its business will not thereby be destroyed. In the absence, therefore, of facts showing that the business is dependent upon the particular skill and knowledge of the person, and that the public do or are likely so to understand it, the founder has no more interest therein than any other stockholder, and has no standing to interfere with the use of the corporate name by another.

If we are right in these conclusions, it follows that the judgment should be modified by limiting the operation of the injunc-

tion to a restraint of the use of the name of the plaintiff upon the ends of the spools of silk in any form, and, as modified, the judgment should be affirmed.

Judgment modified in accordance with opinion of HATCH, J., without costs of appeal to either party. All concur.