## BOYCE *v.* STEIN BROS. & BOYCE, INC.

[No. 429, September Term, 1969.]

*Decided June 5, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*George Gump* and *James F. Dausch* for appellant.

*John J. Ghingher, Jr.*, with whom were *Weinberg & Green* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The crux of this dispute is the right of the appellee and defendant below, Stein Bros. & Boyce, Inc., to use the name Boyce in its corporate title. From an order dismissing the bill of complaint for injunctive relief and damages filed by C. Prevost Boyce, Jr., the plaintiff below, this appeal was taken.

The Circuit Court of Baltimore City (Joseph L. Carter, J.) took the case on an agreed statement of facts, which we shall set out in full, omitting references to exhibits filed with the statement, since reference to these will hereafter be made:

"1. From 1872 to 1921, a copartnership trading as 'Stein Bros.' was engaged in the general banking and brokerage business in Baltimore City.[1] In 1921, C. Prevost Boyce, Sr., the father of the Plaintiff, became a general partner in the copartnership and the name of the copartnership was shortly thereafter changed to 'Stein Bros. & Boyce' and the copartnership continued in the general banking and brokerage business in Baltimore City under the name until October 31, 1963. In 1927 the copartnership purchased a seat on the New York Stock Exchange.

"2. The Plaintiff was employed by the copartnership as a salesman or, as is known in the trade, as a registered representative from October 1, 1948 until October 31, 1963.

---

[1] There is some suggestion that the antecedents of the Stein Bros. partnership dated back to 1853.

"3. The said C. Prevost Boyce, Sr. retired as a general partner in the copartnership of Stein Bros. & Boyce in 1954 and, simultaneous with his retirement became a limited partner therein. In order to effectuate this change in status, the said C. Prevost Boyce, Sr. and the other copartners of Stein Bros. & Boyce entered into an agreement dated June 21, 1954 (but effective April 30, 1954) which said agreement provides, in part, as follows:

'The copartnership may use as a part of its name, the word "Boyce" so long as the Limited Partner remains such. In the event of the death of the Limited Partner, the copartnership may use the word "Boyce" as a part of its name for six months after his death and such use of the name may be continued beyond such six months period, with the consent of C. Prevost Boyce, Jr. and if the latter dies before his consent shall have been so given, then with the consent of the personal representatives of C. Prevost Boyce, the Limited Partner.'

\* \* \* C. Prevost Boyce, Sr. died on January 15, 1955 while a Limited Partner in the copartnership.

"4. On April 27, 1955, the Plaintiff, who was then an employee of the copartnership as a salesman or registered representative, entered into a Letter Agreement with the copartnership under the terms of which he consented to the use of the name 'Boyce' by the copartnership of Stein Bros. & Boyce 'as it is now or may be from time to time constituted' with the right on the part of the Plaintiff to require that such use be terminated at the expiration of 12 months written notice given by the Plaintiff at any time subsequent to July 15, 1955. \* \* \*

"5. On or about October 31, 1963, the copart-

nership caused a corporation then known as 'Stein Bros. & Boyce Corporation' to change its name to 'Stein Bros. & Boyce, Inc.', the Defendant. The copartnership transferred to the Defendant corporation substantially all of its assets, subject to its liabilities, under the terms of an Agreement dated June 7, 1963 * * *. The partnership was thereupon dissolved.

"6. From October 31, 1963 to the present time, the banking and brokerage business theretofore conducted by the copartnership of Stein Bros. & Boyce has been conducted in the same manner by the Defendant, Stein Bros. & Boyce, Inc.

"7. The Defendant corporation represented to the general public that there would be absolutely no change in its operations in the banking and brokerage field except for the act of incorporation, as is shown by letter to the firm's customers dated August 29, 1963 from Henry C. Evans (who was a general partner in the copartnership and became an officer and director of the Corporation). * * *

"8. The Defendant corporation caused numerous advertisements to be inserted in newspapers of general circulation in Baltimore City representing that the business has been carried on since the formation of the original copartnership of Stein Bros. in 1853. * * * Similar representations are still being made in newspapers and over the radio.

"9. The Defendant corporation continued to employ the Plaintiff in the same capacity as he was employed by the copartnership, that is, as a salesman or registered representative, until the latter part of September, 1967, at which time the Plaintiff resigned his employment, giving no reason therefor. Pursuant to the Agreement between the Plaintiff's father and the copartnership dated June 21, 1954 * * * and the Letter

Agreement between the Plaintiff and the copartnership dated April 27, 1955 * * *, the Plaintiff, on October 9, 1967, gave written notice to the Defendant to discontinue the use of the name 'Boyce' within twelve (12) months from that date. * * *.

"The Defendant has failed and refused and still fails and refuses to discontinue the use of the name 'Boyce'.

"10. Since leaving the employ of the Defendant in September of 1967, and up to the present time, the Plaintiff has continued to engage in the banking and brokerage business in Baltimore City as a salesman or registered representative. The name 'Boyce' is well known and highly respected in the banking and brokerage circles and by members of the public in Baltimore City. The name 'Boyce' is a valuable business asset in the banking and brokerage field.

"11. The Defendant corporation was originally formed in January, 1926 under the name 'The Six South Calvert Street Company' solely for the purpose of owning the building at that address and its stock at all times was owned, individually, by some or all of the partners of Stein Bros. & Boyce. On December 16, 1944, the name of the corporation was changed to 'Stein Bros. & Boyce Corporation' and it is the same corporation referred to in Article V of the Agreement of June 21, 1954 * * *. After the name change in 1944, the character of the Defendant corporation's business did change to the extent that it did thereafter invest its funds in various securities and also participated in the underwriting of some new issues of securities which it was permitted to do by the New York Stock Exchange as an 'affiliated' corporation. The name of the corporation was changed to Stein Bros. & Boyce, Inc. in 1963.

"12. Both Stein Bros. & Boyce, the copartnership, and Stein Bros. & Boyce, Inc., the Defendant corporation, were and are members of the New York Stock Exchange. Membership in the New York Stock Exchange constituted a valuable asset of the copartnership and now constitutes a valuable asset of the corporation. Neither the partnership nor the Defendant corporation could have carried on its business without being members of the New York Stock Exchange. From the organization of the New York Stock Exchange until 1953, corporations were not permitted to be members and brokerage houses were not permitted, under the rules of the Exchange, to operate as corporations. Such permission was granted to brokerage firms by the Exchange for the first time in 1953.

"13. The Stock Exchange business carried on by the Defendant is not the business carried on under its previous corporate names, but is, and has been, since 1963, the Stock Exchange business previously carried on by Stein Bros. & Boyce as a copartnership."

Mr. C. Prevost Boyce, Sr., died on 15 January 1955. On 10 March 1955, Stein Bros. & Boyce (the Partnership) sent the following letter to C. Prevost Boyce, Jr.:

"Dear Prevost:

"The agreement with your father, as a Limited Partner, provided with respect to the use of the name 'Boyce' by the partnership in the event of your father's death, as follows:

'In the event of the death of the Limited Partner, the copartnership may use the word "Boyce" as a part of its name for six months after his death and such use of the name may be continued beyond such six months period, with the consent of C. Prevost Boyce, Jr. and if the latter die before his consent shall have

been so given, then with the consent of the personal representatives of C. Prevost Boyce, the Limited Partner.'

"It is our desire at this time to continue the use of the name. The right to use it will expire on the 15th day of July, 1955, unless you consent to the use of the name after that date. We would like to continue to use it after that date for as long as we might desire so to do but with right to you to require that the use be terminated at the expiration of twelve months written notice from you advising that you wish us to discontinue the use of the name at the expiration of said period of twelve months.

"If you are willing to grant this right of use subsequent to the 15th day of July, 1955, won't you please so advise on a carbon of this letter and return it to us.

Sincerely yours,
Stein Bros. & Boyce"

On 29 April 1955, Mr. Boyce, Jr., signed a consent appended to a copy of the letter:

"I consent to the use by the copartnership, Stein Bros. & Boyce, as it is now or may be from time to time constituted, of the name 'Boyce' for as long as it may desire to use the name unless subsequent to the 15th day of July, 1955, I give you written notice that the desire to use the name be discontinued at the expiration of twelve months from the date of the notice, in which event the right to use the name shall terminate at the expiration of twelve months from the date of such notice.

C. Prevost Boyce, Jr."

In September of 1967, Mr. Boyce, Jr., who had been with Stein Bros. & Boyce since 1948, resigned and on 9 October 1967 addressed the following letter to Stein Bros.

& Boyce, Inc., which by that time had succeeded to the business of the Partnership:

"Dear Sirs:

"On April 27 [sic], 1955, I consented for the firm of Stein Bros. & Boyce, to use the name of Boyce as long as it may desire or until such time I give you written notice that the use of the name be discontinued.

"As I am no longer affiliated with the firm of Stein Bros. & Boyce, I hereby notify you to discontinue the use of the name 'Boyce' within 12 months of the date of this notice.

Sincerely,
C. Prevost Boyce, Jr."

Subsequent to the consent which Mr. Boyce, Jr., had given in April of 1955, and prior to the October 1967 letter terminating the consent, a significant change had occurred. In January of 1926, the members of the Stein Bros. & Boyce partnership had caused to be formed a corporation known as The Six South Calvert Street Company (Six South Calvert Street), the stock of which was owned by some or all of the partners of the Stein Bros. & Boyce partnership. Initially, the corporation held title to 6 South Calvert Street, where the Partnership's offices were located.

On 16 December 1944, when Mr. Boyce was the senior partner of the Partnership and president of Six South Calvert Street, the charter of that company was amended, giving it wider powers and changing its name to Stein Bros. & Boyce Corporation (the Corporation). After the charter amendment, the Corporation invested in securities and participated, as an affiliate of the Partnership, in the underwriting of new issues. At the time of the retirement of Mr. Boyce, Sr., as general partner in 1954, he owned 30.875% of the capital stock of the Corporation.

Article V of the agreement of 21 June 1954, effective 30 April 1954 (the 1954 Agreement) described in great

particularity the manner in which Mr. Boyce's stock interest in the Corporation was to be liquidated or disposed of in the event of his death or retirement as limited partner or if the requirements of the New York Stock Exchange should dictate a disposition of the stock.

Curiously enough, it was the immediately succeeding Article VI of the 1954 Agreement which imposed the limitation on the use of the name Boyce by the Partnership, yet no mention was made of the use of the name by the Corporation, even though at the time of the 1954 Agreement, corporations were permitted to be members of the New York Stock Exchange. Mr. Boyce, Sr., must have known that since 1944, the Corporation had charter powers enabling it to engage in the brokerage business, and had, in fact, participated in the holding of securities and in the underwriting of new issues.

After the death of Mr. Boyce, Sr., in January, 1955, and the consent to the continued use of the name given by Mr. Boyce, Jr., in April, 1955, for eight years things continued much as they had been. On 7 June 1963, the then directors of Stein Bros. & Boyce Corporation, consisting of certain general partners of the Stein Bros. & Boyce partnership, adopted a series of resolutions reorganizing the Corporation which ultimately were approved by its stockholders. Among the changes contemplated was the acquisition of all the assets, subject to the liabilities, of the Partnership, in exchange for the stock of the Corporation, and the change of the name of the Corporation to Stein Bros. & Boyce, Inc.

This appears to have been effected sometime in October, 1963. Appellant lays great emphasis on a form letter, mailed in August, 1963, to the customers of the Partnership, which said, in part:

"We wish to advise that on or about October 1st we will incorporate our business. The name of the firm will be changed to Stein Bros. & Boyce, Inc. There will be no change in personnel, nor in methods of doing business, simply

the change from a partnership to a corporate form."

* * *

"We appreciate the business you have given us in the past, and hope we may continue to merit your confidence."

He also points out that the Corporation's advertising and stationery respectively continued to bear the legend "Stein Bros. & Boyce, Inc.—Since 1853" and "Stein Bros. & Boyce, Inc.—Established 1853."

The chancellor, in a careful opinion, reasoned out his dismissal of the bill of complaint in this fashion:

(i) Stein Bros. & Boyce, Inc. is a continuation of Stein Bros. & Boyce Corporation: not a new corporate entity formed by the partners to receive the partnership assets.

(ii) The Corporation was vested with the right to use the name Stein Bros. & Boyce prior to the 1954 Agreement.

(iii) The Corporation was not a party to the 1954 Agreement which only imposed a restriction on the use of the name Boyce in the name of the Partnership.

(iv) A corporation has a continuing right to use its name, once lawfully acquired.

The thrust of appellant's argument is that "Stein Bros. & Boyce," as used by the Partnership, was a trade name, and he then makes three points:

(i) The trade name used by the Corporation is identical with the trade name used by the Partnership.

(ii) The Partnership had a contractual right to use the trade name which it assigned to the Corporation and once assigned, the right remained subject to the limitation on use set forth in the 1954 Agreement.

(iii) Even if the Partnership made no assignment of the right to use the trade name, the Corporation was bound by the limitation of the 1954 Agree-

ment when it accepted an assignment of the Partnership's assets, subject to its liabilities.

Although we find these arguments no more persuasive than did Judge Carter, we shall consider each of them. Granting, arguendo, that Stein Bros. & Boyce was a trade name used by the Partnership, the simple fact is that in 1944 Mr. Boyce, Sr., allowed essentially the same trade name to be adopted by a corporation empowered by charter to engage in the brokerage business. Mr. Boyce chose to impose a limitation on the use of his name by the Partnership. Whether his failure to impose a similar limitation on the Corporation was inadvertent or intentional, is a matter of sheer conjecture. He simply failed to do so.

There was no reason for the Partnership to assign to the Corporation the right to use a name which the Corporation already had. Moreover, Article VI of the 1954 Agreement granted the right only *to the co-partnership*. It could not have been assigned to a Corporation even had the Partnership purported to do so. *Bagby & Rivers Co. v. Rivers*, 87 Md. 400, 40 A. 171 (1898).

The answer to the third argument is much the same. Had the Partnership sold its assets to any corporation other than Stein Bros. & Boyce, Inc., the 1954 Agreement would have prevented the assignment of a trade name which included the name "Boyce." But Stein Bros. & Boyce, Inc., which already had the right to use the name, was not a party to the 1954 Agreement, nor bound by the restriction contained in that agreement. The limitation related only to the right conferred—the use of the name Boyce by the Partnership.

There is ample authority for the proposition urged by the appellee that absent proof of unfair competition, which is not charged here, or of restriction by agreement a corporation has a continuing right to the use of a name which it lawfully acquired. See *National Shoe Stores Co. v. National Shoes of New York, Inc.*, 213 Md. 328, 336, 131 A. 2d 909 (1957); *Pfaudler v. Pfaudler*, 114 Misc. 477, 186 N.Y.S. 725 (1920); *Cutter v. Gudebrod Bros.*

*Co.*, 44 A. D. 605, 61 N.Y.S. 225 (1899), *aff'd* 168 N. Y. 512, 61 N. E. 887 (1901) ; 18 C.J.S. *Corporations* § 168 (1939) at 568; 6 Fletcher *Cyclopedia of the Law of Private Corporations* § 2415 (1968) at 15.

The appellant counters with the contention that Stein Bros. & Boyce is a trade name which is entitled to protection, citing *Edmondson Village Theatre v. Einbinder,* 208 Md. 38, 45, 116 A. 2d 377 (1955) ; *Interstate Distilleries, Inc. v. Sherwood Distilling & Distributing Co.,* 173 Md. 173, 180, 195 A. 387 (1937) ; Restatement *Torts* 2d (Tent. Draft No. 8, 1963) § 716 comment b at 50; that it was an asset of the Partnership which would pass with an assignment of its good will, 1 Nims, *Unfair Competition and Trade-Marks* § 31 (4th Ed. 1947) at 140; but could not be assigned except as an incident to the sale of the business or of its good will, *Mascaro v. Snelling and Snelling,* 250 Md. 215, 229-31, 243 A. 2d 1 (1968). We have examined the authorities cited in the scholarly and comprehensive brief filed in support of the appellant's contention but remain unpersuaded. The element of unfair competition or deception which these authorities share, is not here alleged. This point might have been well taken had the Partnership or its partners attempted to evade the 1954 Agreement by causing a corporation to be formed under the name Stein Bros. & Boyce to receive the Partnership assets, or had the Partnership been dissolved and Stein Bros. & Boyce been used as a trade name by one or more of the former partners or a stranger. But this was not the case. Instead the Partnership elected to use as a vehicle for the continuation of the Partnership business an existing corporation to which Mr. Boyce, Sr., had, in effect, given the right to the use of the name Boyce, a right which was neither exclusive nor restricted.

*Order affirmed, costs to be paid*
*by appellant.*